## ARGUED AND DETERMINED

IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT SAVANNAH,

## JANUARY TERM, 1849.

~~~~~~~~~~~~~~~~

No. 1.—THOMAS GREEN, plaintiff in error, *vs.* The MAYOR and ALDERMEN of Savannah, defendants.

[1.] The City Council of Savannah, by an Ordinance, passed on the 26th January, 1826, under the authority of the General Assembly for that purpose, prohibited the cultivation of rice within the corporate limits; and on the 29th May, 1848, passed another Ordinance, declaring that the cultivation of rice, within the corporate limits of the City, was injurious to the health of the citizens, and providing for the removal and destruction of the growing crops of rice, within the corporate limits of the City, as a nuisance: *Held,* that the Ordinances of 1826, and 1848, were good and valid, and binding upon the inhabitants of the City, as *police* regulations; and that the Mayor and Aldermen of the City, under the authority of the Acts of the General Assembly, passed in 1825, 1831 and 1833, had the power and authority to judge of and declare, the planting and growing rice within the corporate limits of the City, to be injurious to the health of the City, and a public nuisance, and to abate the same.

Certiorari. Decided by Judge FLEMING, at Chambers, June, 1848.

On the 29th day of April, in the year 1817, the following contract was entered into between William Mein, and the Mayor and Aldermen of the city of Savannah:

STATE OF GEORGIA, CITY OF SAVANNAH—

This Indenture, made the 29th day of April, in the year of our

Lord, 1817, between William Mein, of said City of Savannah, of the one part, and the Mayor and Aldermen of the said City of Savannah, of the other part: *Witnesseth,* that whereas, at a meeting of the inhabitants of the said City, duly assembled and convened on the      day of March last, certain resolutions were entered into and recommended to the Council for adoption; and more particularly, the completion of certain propositions made to the owners of low-lands, generally called rice-lands, in the vicinity of Savannah, for the alteration of the culture of the said lands, from a wet and water-flowing culture, to a dry one, as being more salubrious and beneficial to the health of the City.   And it was at the said meeting, also, recommended to Council, that a certain sum of money, not exceeding forty dollars per acre, be allowed to the owners of said land, as an inducement for a change of culture, and continuance forever hereafter, of a dry one, and keeping the fields agreed upon, in a proper state for such cultivation, as to attain the object recommended to Council aforesaid. And whereas, in conformity to the further recommendation of said meeting, the Mayor and Aldermen of the City of Savannah, in Council assembled, have passed an Ordinance to obtain a loan of money for the payment contemplated by these resolutions, and for the purpose connected with the same object, and to the acceptation of which the said William Mein, owner of low or rice lands, in the vicinity of Savannah, hath agreed; now, therefore, this indenture witnesseth, that the said William Mein, for himself, his heirs, executors, administrators and assigns, hath covenanted and agreed, and by these presents doth covenant and agree, to and with the Mayor and Aldermen of the City of Savannah, and their successors in office, as follows, to-wit: That from and after the sealing and delivery of these presents, the tract of rice land owned by the said William Mein, being all that tract or parcel of land situated, lying and being on Hutchinson's Island, and the lower point thereof, bounded on the west by lands belonging to the estate of Ward, on the north by the Savannah back river, and on the south by a branch of the Savannah river, which divides it from the City of Savannah and Fig Island, containing six hundred acres, be the same more or less, shall forever hereafter be cultivated, worked, used and employed in dry culture only, or be kept in a dry state, and free from the ebbing and flowing of the tide within the banks, (accidents excepted,) but at such times and in such man-

ner as hereinafter provided for. And for the future cultivation of the said tract of land, in the manner agreed on and contemplated by these presents, the said William Mein doth hereby bind himself, his heirs, executors, administrators and assigns. And further, the said William Mein, for himself, his heirs, executors, administrators and assigns, doth covenant and agree, to and with the said Mayor and Aldermen, and their successors in office, that the said tract of land, and every part thereof, shall be bound, subject and liable, held, pledged and mortgaged, for the purpose of dry culture, and of this agreement, and that the same shall be held, and shall remain so bound and pledged in the hand, possession or occupation of any subsequent holder, owner, heir or purchaser of the whole tract or any part thereof. And the said William Mein, for himself, his heirs, executors, administrators and assigns, doth further covenant and agree, to and with the said Mayor and Aldermen, and their successors in office, that he will not sell or dispose of the said tract of land, or any part thereof, without previously obtaining from the purchaser or purchasers thereof, covenants similar to these presents, for continuation of the dry culture, contemplated by this agreement. And further, also, that the heirs and devisees of the said William Mein, shall always hold possession or enjoy said estate, and every part thereof, expressly subject to the terms mentioned in this agreement, and on no other terms or condition whatsoever. And the said William Mein, for himself, his heirs, executors, administrators and assigns, doth further covenant and agree, to and with the Mayor and Aldermen of the said City of Savannah, and their successors in office, that the said ditches, drains and dams, necessary for the draining and cultivation of said land, in dry culture, or keeping it in a state equally dry, shall at all and every time of the year hereafter, (accidents excepted,) be in good order and fit to resist the usual flowing of the tide, and in such a condition as to keep the said land dry, as intended by this agreement, and prevent the deposite and remaining of water thereon. And the said William Mein, for himself, his heirs, executors, administrators and assigns, and for all the future purchasers or holders of the said land, doth further covenant and agree, to and with the said Mayor and Aldermen of the city of Savannah, and their successors in office, that all damages recoverable at law for any breach or infraction of this agreement, shall bear and hold at all

times a specific lien on the said land, and bind the same in preference to any other claim or demands whatsoever; and the said land is hereby made chargeable and subject to this condition, lien and agreement, provided that in the event of the said land becoming divided and held by different proprietors, that the said proprietors, and their said portions of the land respectively held by them, shall be so held and considered liable only in proportion so held, for all the covenants and agreements contained in this contract; provided, nevertheless, and it is hereby fully understood and agreed by the said Mayor and Aldermen, for themselves and their successors in office, that this agreement, and every clause and part thereof, is accepted and entered into, subject to the following conditions and terms—that is to say, that the said William Mein, his heirs, executors, administrators and assigns, shall be at full liberty to make use of water, and in all manner whatsoever, to overflow the said land, and every part thereof, prior to the first day of March, in each and every year hereafter, and from and after the first day of March, of each and every year hereafter, to cultivate in dry culture or keep the land dry until the next succeeding first day of December, without the let, suit, trouble or hinderance of the said Mayor and Aldermen, or their successors in office, or any person or persons acting under their authority; and also, upon the further proviso and condition, that the said William Mein, his heirs, executors, administrators and assigns, shall be allowed, at all times, if necessary, the use of the tide water, for the purpose of aiding in and bringing up the seed of dry culture plants.    And in case of a drought between the first day of March and December, the further use thereof to overflow said land, provided that the said land does not remain under water, after such overflowing, more than a single tide, and provided, also, that the said flowing thus permitted, shall be considered as a termination of the drought, as it relates to the said land so overflowed; and provided, also, that the said William Mein, for himself, his heirs, executors, administrators and assigns, may, from time to time, as thought useful or necessary to his or their interests, make and cut canals through the said land, from Savannah river to back river, without let, hinderance or molestation; and the said Mayor and Aldermen of the City of Savannah, as certified by the signature of the Hon. Thos. U. P. Charlton, Mayor of the said City, and authorized under the seal of their incorporation, do, for themselves and their

successors in office, in consideration of the covenant before entered into, on the part of the said William Mein, at the sealing and delivery of these presents, engage and agree to pay, or cause to be paid, to the said William Mein, the sum of thirty dollars per acre of said land, now fit and prepared for the dry culture, amounting to the sum of twelve thousand dollars, for four hundred acres, now fit and prepared for the dry culture contemplated by this agreement, and the further sum of six thousand dollars, being thirty dollars per acre, for two hundred acres of the said tract, not yet fit and prepared for the culture aforesaid; and the said Mayor and Aldermen of the City of Savannah, for themselves and their successors in office, further engage and agree, that on the first day of March next, the further sums of ten dollars shall be paid for each and every acre of the said land, to the said William Mein, his heirs, executors, administrators and assigns, deducting, nevertheless, from the said ten dollars per acre, when paid, the amount of interest, at seven per cent. on the advance made of the last mentioned sum of six thousand dollars, from the day of payment to the day the said land shall be certified to be fit and prepared for dry culture; and it is hereby further agreed by all the contracting parties hereto, that whenever the said William Mein, his heirs, executors, administrators or assigns, shall notify, by giving a written notice to the said Mayor and Aldermen, or the Board created for carrying the object of this agreement into execution, that said last mentioned acres of land, that is to say, the said last mentioned two hundred acres of land, are fit and prepared for the cultivation of dry culture, that then the parties interested shall each appoint one respectable person to examine and report the state of the said land, and if the balance of the money ought to be paid; and in case of disagreement between the said two persons, they shall choose a third, and the report of any two shall be received and acted upon; and it is further understood and agreed by the contracting parties, that a sufficient margin shall be left outside of the dams, as shall be judged necessary and safe, by the said William Mein, his heirs, executors, administrators and assigns, as well for the protection of said banks, as for procuring earth and materials for the repair and keeping the said dams in order, from time to time.

In witness whereof, the said Thomas U. P. Charlton, Mayor of the said City, hath hereunto set his hand and the seal of the said

City, and the said William Mein hath also set his hand and seal, the day and year first above mentioned.

     (Signed,)       THOMAS U. P. CHARLTON, Mayor.

                   WILLIAM MEIN.         · [L. s.]

Sealed and delivered in presence of

  PETER SHICK.

  SAMUEL M. BOND, N. P.

In 1825, the Legislature of Georgia passed an Act entitled " An Act, to amend and consolidate the several Acts which have been passed in relation to the powers and privileges of the corporation of the City of Savannah, and the hamlets thereof, and for the purposes herein mentioned," by the 1st section of which it was enacted, that " the jurisdictional limits of the City of Savannah, and the hamlets thereof, shall be extended to one mile beyond the present boundary, so as to enable the Mayor and Aldermen, for the time being, to pass an Ordinance or Ordinances, prohibiting the cultivation of rice within the aforesaid extended limits; and if any person, so prohibited in the cultivation of rice, within the limits of the said City, shall feel himself aggrieved by the said prohibition, he shall have the privilege of appeal to a special Jury, before the Superior Court of Chatham County, and the point at issue shall be, Is the cultivation of rice in the place prohibited, injurious to the health of any portion of the citizens or inhabitants of Savannah? And if it shall be determined that the said cultivation, in said prohibited place, be not injurious to the health of said citizens or inhabitants of said City, then, and in that event, the said prohibition shall be null and void, otherwise to remain in full force and vigor—*Provided, nevertheless*, that nothing herein contained shall authorize the said Mayor and Aldermen to impose any tax upon persons or property in the aforesaid extended limits."

In 1831, the Legislature passed an Act amendatory of the foregoing, by the 1st section of which it was enacted, that " it shall and may be lawful for the Mayor and Aldermen of the City of Savannah, and hamlets thereof, to pass such Laws and Ordinances as they may consider fit and proper for the purposes of carrying fully into effect the plan and system for reducing to, and keeping in a state of dry culture, the low or swamp lands situate around and lying about the City of Savannah and hamlets thereof; and also to remove such nuisances, or causes of disease, which may affect the citizens thereof, or in any wise injure their health—*Pro-*

*vided,* the said Laws and Ordinances so passed, as aforesaid, be not contrary to, or in violation of, the Constitution of the United States, or of this State."

In January, 1826, the Mayor and Aldermen of the City of Savannah passed an Ordinance, by which, after reciting the Act of 1825, it was ordained that the cultivation of rice within the said limits be prohibited. By the 2nd section, it was provided, " That any person who shall plant, rear, or cultivate rice, or cause it to be planted, reared or cultivated, in contravention of the provisions of this Ordinance, shall be subject, and is hereby made subject, to a penalty of one hundred dollars, for each and every day that he, she or they shall so plant, rear, cultivate, &c."

The 4th section provided for the collection of those fines by warrant of distress.

On the 29th day of May, 1848, the Mayor and Aldermen of the City of Savannah passed an Ordinance, which, after referring to the power conferred by the Act of 1831, ordained " that it shall be the duty of the Mayor, whenever he shall receive information that rice is planted or cultivated upon any of the lands around the City, subject to dry culture contracts, to serve a notice upon the owner, tenant or cultivator of the said land, or any person having charge of the same, or his, her or their agents, requiring the said persons to desist from the said culture, and to destroy the said rice, if growing; or to appear before Council, at a time and place in said notice to be specified, not exceeding ten days from the date thereof, and to show cause, if any they have, why the said rice should not be removed and destroyed as a nuisance."

Sect. 2. " If the said owner, &c. shall not, upon said notice, comply with the terms of the same, or shall fail to appear before Council, or if having appeared, no sufficient cause should be shown why the said rice should not be removed, and its culture abandoned; in such case, the said Mayor and Aldermen may direct the City Marshal, forthwith, to remove the said rice, and to destroy the same effectually, wherever it may be growing or planted on the said dry culture contract."

On the 31st May, 1848, a notice was served upon Thomas Green, (an owner of a portion of the tract of land included in the foregoing contract of William Mein,) signed by the Mayor of the City of Savannah, requiring said Green to desist from the cultivation of rice upon the lands included in said contract, and to destroy

said rice, or appear before Council on Thursday, 1st of June, 1848, at 4 o'clock in the afternoon, and show cause why the said growing rice should not be removed and destroyed as a nuisance.

. Green appeared and showed cause, by introducing testimony, to show that the rice was not a nuisance : Whereupon, upon hearing argument upon the law and testimony, the Council overruled the showing, and ordered the growing rice to be destroyed. To which decision, Green, by his counsel, excepted, and obtained from the Hon. William B. Fleming, Judge of the Eastern District, a *rule nisi*, requiring the said Mayor and Aldermen to show cause before him, on 12th June, 1848, at ten o'clock, A. M. at the Court House in the City of Savannah, why a writ of certiorari should not be granted.

Upon said hearing, Judge Fleming refused to grant a certiorari, and decided, among other things, that the Act of 1825, extending the jurisdictional limits of the City of Savannah, one mile, and authorizing the Mayor and Aldermen of the City of Savannah to pass an Ordinance, or Ordinances, prohibiting the cultivation of rice within said limits, is constitutional, so far as it embraces lands which are subject to the dry culture contracts ; that said law does not impair the obligation of contracts, nor violate vested rights ; that the Act of 1831, and the Ordinance of the City thereon, are constitutional ; that said contract binds Mein, his heirs, executors, administrators and assigns, not to cultivate rice upon lands covered by said contract ; that rice was not a dry culture plant, in contemplation of said contract ; that neither the said Mein, nor his assigns, can deny that the planting of rice, and the crop therefrom, is a nuisance, which can be abated under the Law of 1831 ; that, as a nuisance, it can be abated under the Act of 1831, by the Mayor and Aldermen.

To which decision, Green, by his counsel, excepted, and has assigned the same as erroneous.

H. R. JACKSON, for plaintiff in error.

BARTOW & LAW, for defendants.

*By the Court.*—WARNER, J. delivering the opinion.

. The two main questions presented for our consideration, on

the argument of this cause, were—First, the construction of the contract entered into on the 29th of April, 1817, between William Mein and the Mayor and Aldermen of the City of Savannah; and, Second, whether the Mayor and Aldermen of the City had the right, under the Constitution of the United States, the Constitution of the State of Georgia, and the Laws thereof, to enact the Ordinances of 26th January, 1826, and 29th May, 1848, in pursuance of which, the growing crop of rice of the plaintiff in error was cut down and destroyed.

Not being unanimous in our opinions as to the construction to be given to the contract, in regard to the *absolute prohibition* of the cultivation of *rice* on the lands embraced therein, by the dry culture system, we place our judgment entirely on the other ground, independent of the contract.

[1.] Had the Mayor and Aldermen of the City of Savannah the power and authority, under the Constitution and Laws of the State, to enact the Ordinances of the 26th of January, 1826, and the 29th of May, 1848, and to direct the destruction of the growing crop of rice of the plaintiff in error, in the manner stated in the record? By the 1st section of the Act of the 24th of December, 1825, the jurisdictional limits of the City were extended one mile beyond the then present boundary, so as to enable the Mayor and Aldermen, for the time being, to pass an Ordinance, or Ordinances, prohibiting the cultivation of rice within the aforesaid extended limits. By the 6th section of said Act, the Mayor and Aldermen have full power to remove *all nuisances* within the limits of the Corporation. *Dawson's Compilation*, 464. By the Act of 1831, which is amendatory of the Act of 1825, the Mayor and Aldermen of the City of Savannah are empowered to pass such Laws and Ordinances as they may consider fit and proper, for the purposes of keeping in a state of dry culture the low or swamp lands, situated around and about the City and the hamlets thereof; and also, to remove such *nuisances* or *causes of disease,* which may affect the citizens thereof, or *in any wise injure their health :* Provided, the said Laws and Ordinances shall not violate the Constitution of the United States or of this State. By the 24th section of the 10th division of the Penal Code, it is provided that any *nuisance,* which tends to the immediate annoyance of the citizens in general, or is manifestly injurious to the *public health* and safety, or tends greatly to corrupt the manners

and morals of the people, which may exist in a town or city, under the government of a mayor, intendant, aldermen, wardens or council, or commissioners, such nuisance, by and with the advice of said aldermen, wardens, or council, or commissioners, may be abated and removed by order of said mayor, or intendant, or commissioners, which order shall be directed to, and executed by the marshal of said town, or city, or his deputy; and reasonable notice shall, in every case, be given to the parties interested, of the time and place of meeting of such mayor, intendant and aldermen, wardens or council, or commissioners. It is also provided, that if the nuisance complained of, shall be a grist or saw mill, or other valuable water machinery, then, the manner of proceeding, to abate the nuisance, is different. *Prince's Dig.* 648. The Ordinance of the City, passed in January, 1826, under the authority of the Act of the Legislature of 1825, prohibited the rearing or cultivating rice within the limits of the City, or within one mile beyond the then present boundary of the same. The plaintiff in error, in the spring of 1848, violated the Ordinance of 1826, by planting rice on Hutchinson's Island, within the corporate limits of the City, as declared by the Act of 1825. The rice was planted and growing in open violation of a public law of the City, which the plaintiff in error was bound to know; and this law of the City was as binding upon him (if constitutional) as any law enacted by the General Assembly of the State. By the 22d section of the 1st article of the Constitution, the General Assembly have power to make all Laws and Ordinances which they shall deem necessary and proper, for the good of the State, which shall not be repugnant to the Constitution. *Prince*, 905.

The General Assembly, by the Act of 1825, delegated the authority to the Mayor and Aldermen of the City of Savannah, to enact the Ordinance of 1826, prohibiting the cultivation of rice within the prescribed limits.

But it is said that the Acts of the General Assembly of 1825 and 1831, and the City Ordinances of 1826 and 1848, made under the authority of those Acts, are unconstitutional; because they violate the contract between the government and its citizen, under which the latter is entitled to the full and uninterrupted enjoyment of his rights of property. The Mayor and Aldermen derive their authority to make the Ordinances in question, from the General Assembly, and if the General Assembly have not the power

Green *vs.* The Mayor and Aldermen of Savannah.

and authority to enact such laws and regulations with regard to the private property of the citizen, under the Federal and State Constitutions, then, the Mayor and Aldermen of the City of Savannah cannot do so. The proposition that the citizen is entitled to the full, absolute and uninterrupted enjoyment of his rights of property, under *all circumstances,* cannot, for a moment, be admitted. This vested right to his property, is not, under all circumstances, absolute and illimitable, so as to authorise him to use it in any manner, when and where he pleases, regardless of the rights of others. The citizen may have a vested right to make gunpowder, and have a vested right to the same when made; but he has not a vested right to deposit his gunpowder in the heart of a populous City, in such manner as to endanger the safety and lives of the inhabitants of the City. The plaintiff in error has a vested right to his land, on Hutchinson's Island; but he has not a vested right to use it, or cultivate it, in such manner as to injure the health of the inhabitants of the City. No one can have a vested right to create or continue a *public nuisance,* by the use of his property; the fundamental principles of the social compact forbid it. But the plaintiff in error contends, that it has not been established, that the cultivation of rice by him on Hutchinson's Island, did endanger the health of the inhabitants of the City. We have already shown, that the authority was conferred on the Mayor and Aldermen, to pass such Laws and Ordinances as *they might consider fit and proper,* to remove such nuisances, or causes of disease, which might affect the citizens of the City of Savannah, or in *any wise injure their health.* The Mayor and Aldermen have already adjudged, that the cultivation of rice, within the corporate limits of the City, was injurious to the *health of the City,* by the enactment of the Ordinances of 1826 and 1848. In *Martin vs. Mott, (*12 *Wheat.* 19,*)* it was held, whenever a Statute gives a discretionary power to any person, to be exercised by him, upon his own opinion of certain facts, it is a sound rule of construction, that the Statute constitutes him the *sole and exclusive judge of the existence of those facts.*

The principle settled in *Martin vs. Mott,* applies with much greater force to the *law-making power itself,* than to a single officer of the Government. Legislative bodies judge of the exigency upon which their laws are founded; and when they speak, their judgment is implied in the law itself. *Stuyvesant vs. The*

*Mayor, &c. of New York,* 7 *Cowen,* 607. In the case before us, the enactment of the Ordinance is not the only evidence disclosed by the record, that the growing rice within the corporate limits, was injurious to the health of the City, and therefore a *nuisance.* The plaintiff in error, was notified to appear before the City Council, and show cause why his growing crop of rice should not be abated as a nuisance. He appeared, and showed cause by introducing testimony : Whereupon, hearing argument upon the law and the testimony, to show the cultivation of the rice was not a nuisance, the City Council overruled the showing, and ordered the growing rice to be destroyed. The judgment of the City Council, upon the question of the existence of a nuisance, within the corporate limits of the City, was, in our opinion, conclusive evidence of that fact. It is also insisted, that the Ordinance of 1848, altered and changed the remedy prescribed by the Ordinance of 1826, to prevent the growing rice within the corporate limits of the City ; that when the plaintiff in error planted his rice, the only penalty which he incurred, was, that he should be liable to pay one hundred dollars, for each and every day he should plant, rear or cultivate rice; whereas, by the Ordinance of 1848, the growing crop of rice is directed to be removed, and destroyed as a nuisance. This latter remedy, it is said, interfered with the *vested* rights of property of the plaintiff, to the rice planted by him, and destroyed by order of the City Council, and is void, as being repugnant to the fundamental law of the land. The plaintiff's rice, as we have already shown, was planted by him in open violation of the Ordinance of 1826. Can the plaintiff have a vested right to his growing crop of rice, which was planted, and growing, in open violation of a public law of the City ? Can he be said to have a vested right in that which is *unlawful,* and prohibited by competent authority ? The additional, and more efficient remedy, prescribed by the Ordinance of 1848, did not divest any right of the plaintiff, previously acquired, to the growing crop of rice, for the reason that it was planted and growing, in open violation of a public law, of which he was bound to take notice. The Ordinance of 1848, it is said, is unconstitutional, because it destroys the property of the citizen, for the benefit of the public, without compensation. In *Young vs. McKenzie, et al.* (4 *Kelly,* 31,) we held, that private property could not be taken and appropriated for the *permanent use* of the public, without just compensation being made ;

Green *vs.* The Mayor and Aldermen of Savannah.

but there is a wide and marked distinction, in our judgment, between an appropriation of the private property of the citizen, *to the permanent use* of the public; and a *police* regulation, prescribing the *manner* in which the citizen shall use his private property, so as not to injure others.   In the one case, the property is taken by the public, and appropriated to its use; the citizen is deprived of it—evicted from it.   In the other, the citizen is not deprived of his property; the police law merely regulates the *manner* in which he shall use it, for the good of the public.   The plaintiff in error here, is not deprived of his land, for the use of the public; he has not been evicted from it; he is only restrained from using it in a particular manner, because such particular use operates as a nuisance, and is destructive of the public health. The sovereign power, in a community, therefore, may, and ought to prescribe the manner of exercising rights over property.   It is for the better protection and enjoyment of that absolute dominion, which the individual claims.   The power rests on the implied right and duty of the supreme power, to protect all, by statutory regulations; so, that, on the whole, the benefit of all is promoted.   Every public regulation, in a City, may, and does, in some sense, limit and restrict the absolute right that existed previously; but this is not considered as an injury; so far from it, the individual, as well as others, is supposed to be benefited. *Vanderbilt vs. Adams,* 7 *Cowen,* 351.   If it should be held, that the corporate authorities of the City of Savannah have not the right to *regulate the use of private property* in the City, so as to prevent its proving pernicious to the health and morals of the citizens, generally, it would strike at the very foundation of all police regulations.   Every right, from an absolute ownership in property, down to a mere easement, is purchased and holden, subject to the restriction, that it shall be so exercised as not to injure others.   *Stuyvesant vs. The Mayor, &c. of New York,* 7 *Cowen,* 605.   *Baker vs. The City of Boston,* 12 *Pickering,* 193, '4.   The Ordinance of 1848, being a mere *police* regulation for the protection of the health of the City, does not, in any way, violate the 10th sect. of the 1st art. of the Constitution of the United States, which prohibits the States from passing *ex post facto* laws, or laws impairing the obligation of contracts.   In *Gibbons vs. Ogden,* (9 *Wheaton,* 1,) it was held that Inspection Laws, Quarantine Laws, and *Health Laws,* of every description, form a portion of that

immense mass of legislation, which embraces every thing within the territory of the States, not surrendered to the General Government; all of which can be most advantageously exercised by the States themselves. Our judgment then, is, that the Ordinances of the City Council of Savannah, passed in January, 1826, and in May, 1848, are good and valid, and binding upon the plaintiff in error, as *police* regulations of the City; and that the Mayor and Aldermen of the City, under the authority of the Acts of the General Assembly, passed in the years 1825, 1831 and 1833, had the power and authority to judge of and declare, the planting and growing of rice, within the corporate limits of the City, to be injurious to the health of the City, and a public nuisance, and to abate the same.

Let the judgment of the Court below be affirmed.