JOHN HURST, PROSECUTING ATTORNEY OF CHIPPEWA COUNTY, v. FRANK R. WARNER.

*Constitutional law—Delegation of legislative power—State Board of Health—Disinfection of baggage—Validity of rules.*

1. Act No. 230, Laws of 1885, as amended by Act No. 47, Laws of 1893, entitled "An act to provide for the prevention of the introduction and spread of cholera and other dangerous, communicable diseases," and the effect of the provisions of which is to declare it unlawful for any person to refuse to permit his baggage and personal effects to be disinfected in accordance with the rules and regulations of the State Board of Health, made and established pursuant to said act, is not unconstitutional for the reason that it delegates to the State Board of Health legislative power, in contravention of section 1 of article 4 of the Constitution, which vests the legislative power in a Senate and House of Representatives.[1]

---

[1] With this case in 26 L. R. A. 484, is an extensive note on quarantine regulations by health authorities.

2. By section 3 of the act, the State Board of Health is authorized to establish general rules, and, by an inspector acting by virtue thereof, to detain railroad cars or other public or private conveyances whenever it shall be shown to the satisfaction of the board, or to the inspector, as provided in such rules, that such cars or other conveyances contain any passenger, person, or property which has been exposed to cholera, diphtheria, or other dangerous, communicable disease, or when it shall be shown to the satisfaction of the board or inspector as aforesaid that any passenger, person, or property is being transported on such cars or other public or private conveyance from any locality within or without this State where any such dangerous, communicable disease exists, and where, under the circumstances shown to such board, such persons or property are likely to carry infection of such dangerous, communicable disease. And it is held that a rule which does not make it a prerequisite to the inspection authorized by section 3 that the baggage being transported come from a locality where such dangerous, communicable disease exists, as ascertained either by the board or inspector, is broader than the statute, and cannot be sustained.

3. The Court are not to be understood as intimating that it would not be competent for the Legislature to provide for the disinfection of all baggage, where, in the opinion of the State Board of Health, from the prevalence of a contagious disease, such precaution is necessary.

*Certiorari* to Chippewa. (Steere, J.) Argued June 28, 1894. Decided September 27, 1894.

Relator applied to the circuit court for a *mandamus* to compel respondent to issue a warrant for the arrest of a person charged with the violation of a rule adopted by the State Board of Health under Act No. 47, Laws of 1893, and brings *certiorari* to review an order denying the writ. Affirmed. The facts are stated in the opinion.

*A. A. Ellis,* Attorney General, for relator.

*E. C. Chapin* (*John D. Conely,* of counsel), for respondent.

MONTGOMERY, J. The relator, who is prosecuting attor-

ney for the county of Chippewa, on the 24th of November, 1893, presented to the respondent, who is a justice of the peace of said county, a complaint alleging that one Robert B. Finch was a station agent of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company at Sault Ste. Marie, and on the 23d of November, 1893, was in charge of a train belonging to said railway company; that on said train there was baggage, consisting of clothing, wearing apparel, etc., belonging to one Edmund Watelet, an immigrant, late of Havre, France, who was traveling through Michigan to Minneapolis, and whose baggage was liable to be disinfected by one Thomas N. Rogers, an inspector authorized by the Michigan State Board of Health to disinfect the baggage of all immigrants destined to pass into or through the State of Michigan; that said Finch was requested by said Rogers to detain said baggage for inspection and disinfection, and willfully refused so to do, and proceeded with said train and said baggage into and through Michigan, in violation of rule No. 2, framed and published by the Michigan State Board of Health under Act No. 230, Laws of 1885, as amended by Act No. 47, Laws of 1893, of this State. Upon the presentation of this complaint the respondent was requested by the relator to cause a warrant to be issued, based upon said complaint, but he declined to do so for the reason that Act No. 47, Laws of 1893, was unconstitutional and void, and for the further reason that, if said act was not void, rule No. 2, upon which the prosecution was based, was not authorized by said act, and that the Board of Health exceeded its authority in passing said rule. The relator then applied to the circuit court for a *mandamus*, which was refused, and a writ of *certiorari* has been issued to review the decision of the circuit judge. The two questions presented here are those which determined the action of the justice.

1. It is contended, and the circuit judge held, that the statute in question is unconstitutional for the reason that it delegates to the State Board of Health legislative power, in contravention of section 1 of article 4 of the Constitution, which provides that the "legislative power is vested in a Senate and House of Representatives." To determine the question involved, it is necessary to refer at some length to the provisions of the statute. Section 1 provides that—

"Whenever it shall be shown to the satisfaction of the State Board of Health that cholera, diphtheria, or other dangerous, communicable disease exists in any foreign country, neighboring state, or locality within this State, whereby the public health is imperiled, and it shall be further shown that immigrants, passengers, or other persons seeking to enter this State, or to travel from place to place within this State, are coming from any locality where such dangerous, communicable disease exists, and are likely to carry infection of such dangerous, communicable disease, the State Board of Health shall be authorized to establish a system of quarantine for the State of Michigan, or for any portion thereof."

Section 2 provides that—

"Such quarantine shall be for the purpose of preventing all immigrants, passengers, or other persons, under the circumstances mentioned in section one of this act, from entering the State, or from going from place to place within the State, who, in the opinion of the State Board of Health, or in the opinion of an inspector duly appointed by said board, are likely to carry infection of cholera, small-pox, diphtheria, or other dangerous, communicable disease; and for the detention of all such persons outside the borders of the State, or, if already within the State, at the places where they may be or at the place they have been exposed to or have contracted such dangerous, communicable disease, or at such suitable place as such board may provide, during the period of the incubation of such disease, or of its existence if already developed, and until, in the opinion of the State Board of Health, such persons are free from all danger of infection."

102 MICH.—16.

Section 3 provides that—

"The State Board of Health is authorized to establish general rules, and, by an inspector acting by virtue thereof, to detain railroad cars or other public or private conveyances whenever it shall be shown to the satisfaction of such board, or to the inspector, as provided in such rules, that such cars or other conveyances contain any passenger, person, or property which has been exposed to cholera, diphtheria, or other dangerous, communicable disease, or when it shall be shown to the satisfaction of such board or inspector as aforesaid that any passenger, person, or property is being transported on such railroad cars or other public or private conveyance from any locality within or without this State where any such dangerous, communicable disease exists, and where, under the circumstances shown to such board, such persons or property are likely to carry infection of such dangerous, communicable disease. In such case said board may, by its duly constituted inspectors, remove, isolate, place under the care of local boards of health, order to be returned to the places whence they came, or dispose of in any other manner it may consider proper, all railroad cars or other conveyances, all passengers in such railroad cars or other conveyances, when there is reason, as aforesaid, to believe such may have contracted or become infected with any dangerous, communicable disease, or have been exposed or infected by any such disease in a manner likely to render them bearers of infection.   *   *   *"

Section 4 provides:

"All such persons, their baggage and other personal effects, and all such conveyances shall be disinfected under such rules and regulations as the State Board of Health may establish for the purpose of carrying into effect the provisions of this act, before such persons or baggage or conveyances shall be permitted to enter the State, or to proceed to their or its destination if already in the State."

Section 5 provides for the disinfection of goods, merchandise, conveyance, or other property which the State Board has reason to believe may carry the germs of cholera, or other dangerous, communicable disease, and authorizes the board, under the circumstances mentioned

in sections 2 and 3 of the act, to prohibit the entry of such goods, merchandise, or other property into the State, or their being moved, if within the State, until such disinfection shall be accomplished. Section 6 provides:

" It shall be the duty of the State Board of Health to frame and publish rules for the inspection, isolation, detention, and disinfection contemplated in this act. Whoever shall willfully violate the rules of the State Board of Health, made in pursuance of this act, or the order, by its duly appointed inspector, made in obedience to such rules, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be liable to payment of a fine of $100 and costs of prosecution, or imprisonment in the county jail for a period not to exceed 90 days," etc.

As was said by Chief Justice Marshall in *Wayman v. Southard,,* 10 Wheat. 1:

"It will not be contended that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But Congress may certainly delegate to others powers which the legislature may rightfully exercise itself. * * * The difference between the departments undoubtedly is that the legislature makes, the executive executes, and the judiciary construes the law. But the maker of the law may commit something to the discretion of the other departments, and the precise boundary of this power is a subject of delicate and difficult inquiry."

In *Re Griner,* 16 Wis. 423, 433, Mr. Justice Cole, speaking for the court, and referring to the rule that the powers of the different departments are not to be confounded, or delegated by the one department to the other, said:

" Most of the propositions stated are recognized political maxims, under our form of government. It is only the conclusion or deduction from those propositions about which any doubt can exist. No one will seriously contend that Congress can delegate legislative power to the President. But a distinction must be made of 'those important subjects which must be entirely regulated by the

legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provision to fill up the detail.' It would seem that the power given to the President to make all rules and regulations to carry into effect the law for calling out the militia is of the latter character. Congress might have regulated by its legislation the whole details of the draft, if it had thought proper to do so. But having, in the most ample manner, clothed the President with power to call forth the militia, it further provided that he should make all proper rules and regulations for the enforcement of the draft, where state laws upon the subject were defective. * * * This no more partakes of legislative power than that discretionary authority intrusted to every department of the government in a variety of cases. This practice of giving discretionary power to other departments or agencies, who were intrusted with the duty of carrying into effect some general provisions of law, had its origin at the adoption of the Constitution, and in the action of the first Congress under it, as the federal legislation abundantly shows."

See, also, as bearing upon this question, *Field v. Clark,* 143 U. S. 649; *Locke's Appeal,* 72 Penn. St. 491; *Railroad Co. v. Smith,* 70 Ga. 694.

In the present case we think it can hardly be doubted, under the authorities cited, that the Legislature might have provided for the disinfection of the baggage and personal effects of travelers coming from infected ports, under the direction of an inspector of the board. To have made such a law effective, it would have been essential that the inspector should be given authority to act, and to make it a misdemeanor to refuse to recognize his authority. The present act does nothing more, except that it provides that such disinfection shall take place under general rules to be adopted by the State Board of Health. The rules relate to matter of detail. It is well known that there are different methods of disinfection. It was properly left to the board, by the Legislature, to determine as to these methods; and, instead of intrusting

it to the discretion of the individual inspector, it was prescribed that general rules should be adopted.

We are referred to the case of *Senate of Happy Home Clubs v. Board of Supervisors*, 99 Mich. 117, as authority for respondent's contention. The statute considered in that case bears no analogy to the statute under consideration. The power was there delegated to a private corporation to make rules governing the conduct of the accused, the observance of which rules should operate to acquit and discharge the accused. This did not leave a discretion in public officials as to the mere details of the operation of the law, but was an attempt to delegate power to a private corporation, which it was clearly beyond the authority of the Legislature to do.

Reliance seems to have been placed by the circuit judge upon the two cases of *Ex parte Cox*, 63 Cal. 21, and *Board of Harbor Commissioners v. Excelsior Redwood Co.*, 88 Id. 491. In the latter case an attempt was made to confer upon the board of harbor commissioners the power to prescribe rules and fix the penalty for their violation, which clearly distinguishes it from the present. In the case of *Ex parte Cox* the petitioner was convicted of a misdemeanor consisting of the violation of a rule and regulation of the board of state viticultural commissioners. The act of the legislature in question declared that the board should have power to declare and enforce rules and regulations in the nature of quarantine, to govern the manner of and restrain or prohibit the importation into the state of infected articles and empty fruit boxes, and declared that a willful violation of the quarantine regulations of the board should be a misdemeanor. The court say:

"The act before us does not say it shall be unlawful to import, distribute, or dispose of infected articles, but it attempts to confer upon the board the power to so declare."

We think our statute is distinguishable in principle from the one here dealt with. The effect of the provisions of our statute is to declare it unlawful for any person to refuse to permit his baggage and personal effects to be disinfected in accordance with the rules and regulations of the State Board of Health. The rules and regulations are limited to the purposes which are specifically described by the act.' We think the statute is constitutional.

2. As above stated, by the act of 1893 it was not intended to confer upon the board any power beyond that of fixing the method to be adopted in carrying into effect the details of the isolation, inspection, disinfection, etc., provided for by the law itself. By the first section the board is authorized to establish a quarantine when it is shown to the satisfaction of the board that dangerous, communicable disease exists in any foreign country, neighboring state, or locality within this State, and when it is further shown that immigrants, passengers, or other persons seeking to enter this State, or to travel from place to place within this State, are coming from any locality where such dangerous, communicable disease exists. By section 3 it is provided that—

"The State Board of Health is authorized to establish general rules, and, by an inspector acting by virtue thereof, to detain railroad cars or other public or private conveyances whenever it shall be shown to the satisfaction of such board, or to the inspector, as provided in such rules, that such cars or other conveyances contain any passenger, person, or property which has been exposed to cholera, diphtheria, or other dangerous, communicable disease, or when it shall be shown to the satisfaction of such board or inspector as aforesaid that any passenger, person, or property is being transported on such railroad cars or other public or private conveyance from any locality within or without this State where any such dangerous, communicable disease exists, and where, under the circumstances shown to such board, such persons or property are

likely to carry infection of such dangerous, communicable disease."

A careful examination of the rules declared by the board, and particularly of the one alleged to have been violated, leads us to the conclusion that the board exceeded the authority conferred by the statute, by the promulgation of the rule in question. The rules recite the existence of communicable diseases in various foreign countries from which immigrants are coming to the United States in large numbers, and then proceed, by rule 2:

"Except as hereinafter specifically excepted, *all* baggage of *all* immigrants, and all containers of all such baggage, destined to pass into or through Michigan, must be detained until disinfected."

The exceptions mentioned are:

*First.* "Baggage bearing a certificate issued by an inspector authorized or accredited by the Michigan State Board of Health."

*Second.* Baggage contained in sealed cars, such seals not to be broken or the cars opened in the State of Michigan.

*Third.* "Hand baggage of immigrants used *en route*, and known to have crossed the ocean in ships uninfected with any dangerous, communicable disease, or bearing a certificate of disinfection, issued by an inspector authorized or accredited by the Michigan State Board of Health."

Under these rules the baggage of all immigrants was subject to disinfection, whether such immigrant came from a port or locality where any dangerous, communicable disease existed or not. Indeed, there was no allegation in the complaint that the baggage in question came from such locality. This is beyond the power of the board.

We do not intimate that it would not be competent for the Legislature to provide for the disinfection of all baggage, where, in the opinion of the State Board of Health, from the prevalence of a contagious disease, such precaution is necessary. But, instead of doing so, it is provided by section 3 that the board *is* authorized to establish gen-

eral rules, and, by an inspector acting by virtue thereof, to detain railroad cars or other public or private conveyances whenever it shall be shown to the satisfaction of such board, or to the inspector, as provided in such rules, that such cars or other conveyances contain any passenger, person, or property which has been exposed, etc., or when it shall be shown to the satisfaction of such board or inspector as aforesaid that such passenger, person, or property is being transported from any locality where any such dangerous, communicable disease exists, and where such persons or property are likely to carry infection of such dangerous, communicable disease. The rule in question did not make it a prerequisite to the inspection that the baggage being transported come from a locality where such disease existed, as ascertained either by the board or inspector, and in this respect was broader than the statute, and cannot be sustained.

It follows that the justice was right in refusing to issue the warrant. We have, however, gone at length into the consideration of the provisions of the statute to show to what extent authority is conferred upon the board, as the question involved is one of great public importance.

The judgment will be affirmed.

The other Justices concurred.