TERRITORY OF HAWAII *v.* ALBERT A. ARAUJO.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED FEBRUARY 26, 1912.                    DECIDED MARCH 7, 1912.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

HEALTH—*Boards of—power to make regulations.*
    Boards of health have no implied or inherent power to make regulations having the force of law.
SAME—*statutory power, grant of.*
    Powers conferred upon boards of health to enable them to effectually perform their functions in safeguarding the public health should receive a liberal construction, but a regulation is void which goes beyond the limits of the power conferred by the legislature.
SAME—*regulation of board of health against having, keeping or maintaining banana trees.*
    Section 6 of a regulation made by the territorial board of health on November 9, 1911, making it unlawful to have, keep, maintain or permit, within certain areas, any banana tree, or any other tree or plant capable of holding water in which mosquito larvae are liable to breed, held to be not authorized by section 991 of the Revised Laws, as amended by Act 132 of the Session Laws of 1911, providing that the board of health may make such regulations respecting water in which mosquito larvae breed as it shall deem necessary for the public health and safety.

OPINION OF THE COURT BY ROBERTSON, C.J.

This case comes to this court upon a writ of error to the circuit court of the first judicial circuit issued upon the petition of the Territory under the provisions of Act 40 of the Session Laws of 1911.

The charge entered against the defendant in the court below was that at Honolulu, Territory of Hawaii, and within one hundred and fifty feet of a dwelling house, within five miles of the harbor of Honolulu, on the first day of February, 1912, he did, unlawfully and wilfully, have, keep and maintain banana trees contrary to the provisions of a certain regulation of the board of health of the Territory of Hawaii, duly passed by the board and approved by the governor on the ninth day of November, 1911, and published on the day following. The regulation, which contained several sections, was set out in full in the charge.

The defendant interposed a demurrer which questioned the sufficiency of the charge and the validity of the regulation upon several grounds. The circuit court sustained the demurrer on the ground that the sixth section of the regulation, being the section which the defendant was accused of having violated, was beyond the power of the board of health to pass. The ruling was based on the construction of the statute under which the board purported to act in making the regulation in question, and, hence, the statute upon which the charge was founded within the meaning of section 1 of said Act 40.

Sections 988 and 991 of the Revised Laws, as amended by Act 132 of the Session Laws of 1911, relating to the board of health, include the following provisions:

"The board shall have the general charge, oversight and care of the health and lives of the people of the Territory. It shall have authority in matters of quarantine and other health matters and may declare and enforce quarantine when none exists and modify and release quarantine when it is established."

"The board of health, with the approval of the governor, may make such regulations respecting nuisances, foul or noxious odors, gases or vapors, *water in which mosquito larvae breed,* sources of filth, causes of sickness or disease, within the respective districts of the Territory * * * as it shall deem necessary for the public health and safety."

Section 992 requires that all such regulations shall be published, and section 993 provides a penalty by fine not exceed-

ing one hundred dollars for the violation of any such regulation.

The regulation which it is alleged the defendant violated included the following provisions: "Section 1. These rules and regulations shall apply to the following described areas in the District of Honolulu, Island of Oahu, Territory of Hawaii, namely (a) the entire area within one mile of the harbor of Honolulu, and (b) all areas within 150 feet of any building within five miles of the harbor of Honolulu." "Section 6. It shall be unlawful to have, keep, maintain or permit on any such area any banana tree, or any other tree or plant *capable of holding water in which mosquito larvae are liable to breed.*"

In affirming the ruling of the court below, we deem it sufficient to state briefly our reasons for holding that the prohibition of the last quoted section of the regulation is in excess of the power granted by the statute to the board of health, and that that section of the regulation is, therefore, invalid.

In *McCandless* v. *Campbell*, 20 Haw. 411, 417, we said that there is an exception to the doctrine of constitutional law that the power conferred upon the legislature to make laws cannot be delegated to any other body or authority in "that the power to enact regulations concerning the public health may be delegated to municipal corporations or local boards of health. Though this latter has been held not to be a delegation of legislative power, but merely the providing of an agency for carrying out the legislative enactment," also that, "It has long been the practice in this country to invest boards of health with what seem to be legislative powers relating to matters affecting the public health, and, in this connection, to authorize the promulgation of rules and regulations which have for their object the protection of the public health and the prevention of disease. The validity of such legislation has been repeatedly affirmed."

But boards of health have no implied or inherent power to make regulations having the obligatory force of law, and every such regulation, to be valid, must be shown to rest upon statu-

tory authority. In this case it is not questioned, and we therefore assume, that the statute authorizing the board of health to make regulations respecting water in which mosquito larvae breed amounts to a grant of power to prohibit the having on one's premises of water in which mosquito larvae breed. The sixth section of the regulation, however, according to the construction to be given to it, contains a prohibition against having within a certain area either "any banana tree" or "any banana tree capable of holding water in which mosquito larvae are liable to breed." In either case, it is clear, the regulation would be much wider in its scope than the statute. There is no such natural or necessary connection between "banana trees" and "water in which mosquito larvae breed," as would justify, under even a most liberal construction, a holding that statutory authority to make regulations respecting the latter would authorize a prohibition against the former. Authority to prohibit the having of water in which mosquito larvae breed is not authority to prohibit the having of a tree which is merely capable of holding water in which such larvae are liable to breed. It would be doing violence to the language used by the legislature to hold that the authority to make regulations respecting water in which mosquito larvae breed was intended to authorize the condemnation of all banana trees within certain areas irrespective of whether they contain water in which, according to the course of nature, mosquitoes will breed. The charge that the defendant did "have, keep and maintain banana trees" seems to have been made on the theory that the regulation contained an absolute prohibition against having such trees within the areas mentioned. Counsel for the Territory, in their brief, say, "It must of course be admitted that all banana plants do not always contain water," also that, "It is only when the water is retained and kept more or less quiet that the mosquito is enabled to lay eggs with any degree of certainty that the eggs will hatch, larvae form, and eventually an adult mosquito be formed," and it would appear from the language of the regu-

lation that the most the board of health could find as a basis upon which to rest its prohibition against the maintenance of banana trees was that they are capable of holding water in which mosquito larvae are liable to breed. But counsel assert it to be a fact that banana trees habitually do hold water in which mosquito larvae breed, and ask the court to take judicial notice of the fact. We may well take notice of the fact that banana trees are capable of holding water, but it is not an accepted fact that they naturally and commonly hold water for the length of time and under the circumstances required to breed mosquito larvae. It is urged that if the court will not take judicial notice of the fact as requested the prosecution should be given an opportunity to make proof of it. But before a charge can be entered under which proofs may be adduced there must be a valid regulation.

It has very properly been held that powers conferred upon boards of health to enable them to effectually perform their important functions in safeguarding the public health should receive a liberal construction. *Gregory* v. *New York,* 40 N. Y. 273, 279; *State* v. *Zimmerman,* 86 Minn. 353, 357; *La Porta* v. *Board of Health,* 71 N. J. L. 88; *Whidden* v. *Cheever,* 69 N. H. 142. But a regulation is void which goes beyond the limits of the power conferred upon the board by the legislature. *Hurst* v. *Warner,* 102 Mich. 238; *State* v. *Burdge* 95 Wis. 390, 399; *Com.* v. *Drew* (Mass.), 94 N. E. 682; *Trabue* v. *Todd County* (Ky.), 102 S. W. 309; *Village of Flushing* v. *Carraher,* 33 N. Y. S. 951; *Blue* v. *Beach,* 155 Ind. 121, 131. "Every person affected by the rules and regulations of such a board or tribunal is required to govern himself in accordance with such rules and regulations *if within the scope of the authority granted by the legislature* and adopted and published as required by law." *Pierce* v. *Doolittle,* 130 Ia. 333, 336.

The case of *Hurst* v. *Warner* affords a very good illustration. A statute of the State of Michigan authorized the state board of health to establish general rules for the detention of railroad

cars and other conveyances whenever it should be shown that such cars or other conveyances contain any person or property which has been exposed to any dangerous communicable disease, or when it should be shown that any person or property was being transported on such railroad cars or other conveyance from any locality where dangerous disease exists and where under the circumstances shown to the board such persons or property are likely to carry infection of such disease. Purporting to act under the statute, the board of health made rules which recited the existence of communicable diseases in various foreign countries from which immigrants were coming to the United States in large numbers, one of which provided that, with certain exceptions, all baggage of all immigrants destined to pass into or through Michigan should be detained until disinfected. The court said, "Under those rules the baggage of all immigrants was subject to disinfection whether such immigrant came from a port or locality where any dangerous communicable disease existed or not. Indeed, there is no allegation in the complaint that the baggage in question came from such locality. This is beyond the power of the board. * * * The rule in question did not make it a prerequisite to the inspection that the baggage being transported came from a locality where such disease existed, as ascertained by the board or inspector, and in this respect was broader than the statute, and cannot be sustained." 102 Mich. 242, 247.

The case of *Green* v. *Savannah,* 6 Ga. 1, cited by the plaintiff-in-error, is not inconsistent with the cases above referred to. In that case, it appears, a statute authorized the mayor and aldermen of the city of Savannah to pass ordinances prohibiting the cultivation of rice within certain limits. An amendatory act authorized the mayor and aldermen to pass ordinances for the purpose of carrying into effect "the plan and system for reducing to and keeping in a state of dry culture, the low or swamp lands situate around and lying about the city of Savannah." An ordinance was passed prohibiting the

cultivation of rice within certain limits. The principal question discussed there was whether the statutes were constitutional, and as the court held them to be valid it followed as a matter of course that the ordinance, which was clearly within the statute, was also valid.

The ruling of the circuit court sustaining the demurrer to the charge is affirmed.

*E. W. Sutton, Deputy Attorney General (Alexander Lindsay, Jr., Attorney General,* with him on the brief), for plaintiff-in-error.

*F. Schnack (E. C. Peters* with him on the brief) for defendant-in-error.