# N. Y. SUPERIOR COURT.

## CHARLES M. REYNOLDS, respondent agt. JACKSON S. SCHULTZ and others, appellants.

For any abuse by the *Board of Health* of the city of New York, of their authority, if they act *judicially*, as stated in the first subdivision, section 14, of the statute by which they were created (*Laws* 1866, *chap.* 74, § 14), such as, 1st. Making an order originally for the abatement of an alleged nuisance without evidence, or for refusing to revoke it, on overwhelming or uncontradicted evidence of its being erroneous, a writ of *certiorari* would afford a remedy.

2d. For refusing to fix a day for hearing of the party affected by the order a *mandamus* would lie; and,

3d. For the *usurpation of jurisdiction* in cases where not warranted by the statute, a *writ of prohibition* would furnish a corrective.

The authority and duties of the Board of Health under said first subdivision of the said fourteenth section, differ so widely from those created under the second of such subdivisions, as to justify the *constitutionality* of the former, even if the latter were defective.

This board are, by the statute, vested with the preliminary right of determining their *jurisdiction*, for the purpose of a hearing and final adjudication; and their decision upon such jurisdiction is final, if there is *any evidence* before them tending to sustain it.

Their provisional order granted under the statute, may become final by the failure of the parties interested and notified to demand a hearing. And whatever objection may be made in cases where no service of notice of the order is made, it will not apply in a case where the party is notified.

Abundant means are provided by the statute for obtaining the *sufficient proof* which the board are to take without leaving their office, or uttering a word themselves of accusation. Therefore, such a notice of accusation, or obtaining evidence in advance, with such opportunity of being heard with evidence, and such a notice of final determination, as the statute prescribes and furnishes, is an exercise of *judicial power*, and binding, unless prevented by some positive constitutional prohibition.

The following objections to the constitutionality of the exercise of power by the Board of Health, under the said first subdivision of section fourteen of the statute, that such proceedings violate "the law of the land," required to be observed by section 1, article 1, of the constitution of this state; and are not "due process of law," under the 6th section of the same article cannot be mantained, to wit:

1. That the functions of *accuser* and *judge*, are blended in the same body,
2. That no *process is served*, or *notice of the proceedings* given to the parties interested,
3. That the *judgment precedes the trial;*
4. That the accused is *not confronted with witnesses against him;*
5. That the *testimony is not under oath; nor the ordinary rules of evidence observed;* and,
6. That no means are afforded to the *accused to compel the attendance of witnesses.*

*General Term, November, 1866.*

*Heard November* 15, 1866.    *Decided January* 16, 1867.
*Before* ROBERTSON, *Ch. J., and* GARVIN, *Justice.*

THE order appealed from in this case by the defendants, restrained them from enforcing an order made by them as " *The Metropolitan Board of Health,*" directing the suspension of the business of manufacturing shell lime, conducted by the plaintiff on certain premises in the city of New York, in East Fifteenth street (between avenues A and B), until the *mode of conducting such business should be so altered* as that no odors could escape into the open air; that *certain materials,* consisting of shells and other substances, *should be removed, and such premises cleaned.* The order so made by the defendants, was a modification of a prior order made by them directing absolutely *such business to be suspended, shells and other matters removed, and the premises thoroughly cleaned;* and directing that " such *premises and business were in a condition, and in effect, dangerous to life and health, and a nuisance.".* Such last mentioned order was so modified, after a service of a copy of it on the plaintiff, and his failure to demand a hearing within the time allowed by law for him to do so.

The order appealed from was made upon an order to show cause why a temporary restraint, which had been granted upon a complaint and accompanying affidavits, should not be continued. And the motion was heard on the papers on which such order to show cause was granted, and a sworn answer of the defendants, with accompanying affidavits.

The complaint sets forth the prosecution by the plaintiff of " *shell burning, or the manufacture of lime from shells,*" on the premises in question, and his payment of a large rent and taxes therefor. That the kilns in which he burned such shells were fifty feet distant from the street, and had been built twenty years previously, and have continually been used for that purpose. That the neighborhood has always been since he commenced such business, closely built upon and populous. That the health of the neighbors is good, and no sickness has resulted from carrying on such business.

It then states the places from which the materials used by the plaintiff in his manufacture, are procured; describes the process of applying the lime in the course of the manufacture to the consumption of animal matter, so that no perceptible smell or exhalation arises—and of heat so as to create an innocuous smell—and of water to the burned shells, so as to create a *disinfecting, inoffensive, agreeable* and *healthful vapor*.

It further alleges, that the product of such process is extensively used in building in the city; is a powerful disinfectant, destroying of or modifying animal matter when brought in contact with it, and not injurious to the health of persons residing in the vicinity of such kilns.

Such complaint also alleges, that one of the defendants, who is president of such board (Schultz), after reading a report in writing made by one of its inspectors, a physician of standing, and residing in the neighborhood of such kilns, favorable to the safety and healthfulness of the plaintiff's business and premises, declared his intention to compel the plaintiff to discontinue his business, and remove the shells he had accumulated; and directed another inspector residing at a distance, and not familiar with such neighborhood, to examine the premises and make a report, who did so in writing; and thereupon the defendants, as such board, made the first order, already alluded to, in which there is a recital that the board had " taken and filed among its records what it regarded as *sufficient* proof to authorize its declaration that the premises and business in question were a nuisance," and it therefore " entered them in its records as a nuisance." That application was thereupon made to the defendant Schultz, *for a hearing* before said board *upon such order*, their *opinion* thereon, and the general condition of the plaintiff's premises. That such Schultz in reply to such application, declared emphatically " that no evidence would satisfy him *that shell burning was not a nuisance,* and *the busines should be stopped* at all events, and a hearing would be productive of no change in the order of the defendants." That about a month and a

half afterwards, an officer of such board, by direction of the defendants, took charge of the plaintiff's premises, and compelled him to suspend his business.

The complaint further alleges, that many kilns at which large amounts of shells are converted into lime by the same process as that used by the plaintiff, exists in the city of New York. That the defendants made a somewhat similar order in regard to another similar but larger establishment, but that neither it nor other establishments, except the plaintiff's, have been placed in charge of an officer.

It further alleges, that the plaintiff has a large quantity of shells on such premises (60,000 bushels), procured at great expense, ready to be converted into lime. That he has a number of men (12) to whom he pays large wages, and a number of horses (7) in use in such business; is under large daily expenses, and manufactures a large quantity (600 bushels) of lime every day. That he has no means independent of such business, and if it is suspended he will be entirely ruined. That the cost of removing such shells would be enormous. That he has no means, and can procure none, to remove the same.

It denies that such premises, or the business carried on thereon, are a nuisance, or detrimental to life or health, and offers to establish that fact before any tribunal "acting according to the ordinary course of the law," in any way the court may require.

The relief demanded by such complaint was, for the restraint of the defendants, which was afterwards granted by the order appealed from, and for further or other relief.

The answer of the defendants denies the allegations in the complaint of the health of the neighbors of the plaintiff's establishment; of the absence of all sickness therefrom; its present and past cleanliness and good order. Also the allegations in it respecting the processes employed by the plaintiff; the effect of the lime; use of heat, and application of water to the materials, and their products at such manufactory.

Also the statement in such complaint of the contents of the report of the first inspector, contained in it, of the declaration of the president of the board on its receipt, and any formal application for a hearing.

It further alleges the intention of the defendants to treat all lime kilns which they are satisfied is a nuisance, in the same way; and that as to the special establishment mentioned in the complaint, the only reason a similar order was not made, was the prior engagement of the defendants, and the lapse of time not being such as is required by law. It controverts the statements of the complaint, as to the extent of the plaintiff's business, except as to the quantity of oyster shells on hand, his means, the expense of removal, and its effect on the plaintiff, as alleged in the complaint.

Such answer claims that the defendants are the regularly constituted "Metropolitan Board of Health;" alleges that they took and filed among its records *what it regarded as sufficient proof* as to the premises and business in question, *to authorize its declaration that the same was in a condition, and in effect, dangerous to life and health,* and a public nuisance; and, thereupon, it entered on its records the same as a nuisance, and made the order before mentioned. That they caused such order to be served on the plaintiff before its execution, and the time fixed by law having elapsed without application for a hearing, or to have such order stayed or modified, by the plaintiff, or any person interested in such premises or business, upon proof of such service, no such hearing, stay or modification having been applied for, made a final order, whereby they modified such first order, directing "such business to be discontinued until the mode of conducting it be so altered that no odors could escape into the external air, and until the shells are removed, and the premises are thoroughly cleaned," and ordered it to be carried into execution.

Such answer also avers, that such premises and the business conducted therein, as it was carried on, were a nuisance, dangerous to life and health, and are *in a condition,* and in effect,

so dangerous at the time of making such orders, and at the commencement of this action. It takes the objection that this court has no jurisdiction to restrain the proceedings of such board, or grant the relief demanded in the complaint.

The allegation in the complaint that an inspector of the defendants was requested by the defendants to make a report, and reported favorably on the plaintiff's establishment, is sustained by the affidavit of such inspector, but denied by the defendant Schultz, qualifiedly, upon belief. The allegation that such defendant on receipt of such report, peremptorily pronounced the business in question a nuisance, and declared his intention to have such business abated, is also sustained by the affidavit of the same inspector, but denied by that of the same defendant, except that he admits stating at some time that in his opinion, *shell burning, as conducted in lime kilns on the east side of the town, between Fourteenth and Fifteenth streets, was a nuisance in those localities, and as then conducted ought to be changed or abated,* and *that it was to correct such evils such board was established.*

The affidavit of the defendant Schultz, further denies any prejudice or predetermination on the part of the defendants against the plaintiff's premises or business; alleges that the opinion *which they formed, and upon which they acted, was derived from the evidence before them.* And that although it convinced them while present, *nothing prevented them from giving a fair and impartial consideration of any contradicting testimony produced.* That before any action was taken by such board, a petition had been presented by a large number of residents of the vicinity, complaining of the plaintiff's establishment as a nuisance, and begging its intervention. That the first order was made upon the written report of one of the inspectors of such board (Dr. Jones), and *other evidence,* satisfactory to them. That the board was always ready and willing to give the plaintiff " *a reasonable and fair opportunity* to be heard before such board." That the plaintiff came to the office of the board with another person, when

such defendant *told him he was entitled to a hearing.* Such other person then asked, what *he thought the chances were on a hearing ?* And such defendant replied, *he did not believe that the board would change its decision ; that he for one had lived too long in the vicinity of the premises, and had experienced too often and too strongly, the bad odor proceeding from it, to be readily convinced that it was not* a nuisance.

The report of the inspector, upon which the defendants acted in making the order in question, states the manufacturing of lime from shells, the presence of unburned shells with animal matter adhering thereto, the refuse and filthy condition of the premises were detrimental to health; that the burning of the shells caused a most foul and unhealthy odor, compelling the closing of doors and windows in the neighborhood.

The other affidavits were principally directed to the question of fact whether the plaintiff's establishment was or was not a nuisance. Other facts appear in the opinion of the court.

C. TRACY *and* G. BLISS, JR., *for defendants, appellants.*
J. C. CARTER, *for plaintiff, respondent.*

*By the court,* ROBERTSON, Ch. J. The circumstances of the present case do not call for such sympathy with the plaintiff, or indignation against the defendants, for unjust oppression of him by them, under cloak of legal authority, as to prevent a dispassionate examination of the legality or unconstitutionality of their acts as a board of health, under the recent statute creating them such. (*N. Y. Sess. L.* 1866, *chap.* 74.) Twenty-five persons residing in the immediate vicinity of the plaintiff's lime kilns, in addition to inspectors sent by the defendants for the purpose of examination, testify to the emission of fetid and deleterious odors from the materials out of which the plaintiff manufactured lime, during the course of their submission to great heat. Only nine neigh-

bors testify to a failure to perceive any such odors, in addition to some experts, casual visitors, or passers by. The existence of fragments of decayed fish, bivalves, and other animal matter among such materials, is not denied. So that it would be difficult to believe that unless some powerful chemical agent were applied to them, they could be submitted to heat without the emission of a pestilential stench. The preponderance of the affirmative over the negative evidence, is, therefore, so great, that we would be compelled to hold on this appeal, that the plaintiff's business as conducted was a nuisance, if the question turned on that alone.

The defendants, moreover, do not appear to have exerted the authority conferred on them by the statute in question, in an arbitrary or more summary manner than it authorizes, provided they have constitutionally a right under it to prevent the plaintiff from conducting his business in the same way in which he had theretofore conducted it, require his materials to be removed, and his premises cleansed.

A formal complaint seems to have been presented to them of the character of the plaintiff's operations. The result of a personal investigation into the charge, by some of the officers of such board, who were medical men, and other evidence was presented to them, upon which they decided that the plaintiff's business and premises *were a nuisance;* and they thereupon made the order complained of. After personal service of such order, and the lapse of the time fixed by the statute after service of it for demanding a hearing, they made a final order modifying and meliorating the first.

No proper demand to fix a time for hearing the plaintiff upon the question of executing, modifying or rescinding such order, seems to have been made on his behalf. And it became absolute, except so far as it was modified. The existence of predetermined hostility, or disinclination to be governed by evidence at all, charged on one of the defendants, is not established; although the declaration of perhaps some preju-

dice on his part against the business in question, as carried on, is admitted. No excuse is offered for not applying for a hearing, nor is there any pretense of any inability on the part of the plaintiff to procure all the evidence he might need on such hearing.

For any abuse by the defendants of their authority, if they act *judicially*, as stated in the first subdivision af section 14, of such statute, such as making the order originally without evidence, or perhaps for refusing to revoke it on overwhelming or uncontradicted evidence of its being erroneous, a writ of *certiorari* would afford a remedy.

For refusing to fix a day for hearing of the party affected, a *mandamus would lie*. And for the *usurpation* of *jurisdiction* in cases where not warranted by the statute, a writ of *pro hibition* would furnish a corrective.

It will be presently seen that the decision of this case will not require any opinion to be expressed upon the constitutional powers of the legislature to delegate legislative authority to third persons, or to authorize them to destroy property, whenever in their opinion prejudicial to the community in any way, without hearing the owner of the property, or allowing him compensation for its destruction. Such questions arise more properly in the case of orders made under the second subdivision of the 14th section of this statute. An examination of the extent to which orders under that subdivision, can constitutionally be enforced, has been rendered unnecessary in this case, by the modification of the order as originally made by the defendants, by striking out all which required any removal of the plaintiff's materials for making lime from the premises in question. When that becomes necessary to be examined, it may be considered as a matter of grave doubt, whether the legislature can constitutionally authorize any person or body, either upon their private opinion or *ex parte* evidence, to destroy property, even under the pretext of the public good, without providing *for a hearing before condemnation, or compensation*. Even in the

case of a conflagration raging, so as to threaten to destroy property not yet on fire, it has been decided necessary, in order to protect public officers authorized to blow up intermediate buildings to prevent its spread, from the burden of establishing its necessity, to provide compensation for the owners of the property destroyed. (2 *R. L.* 368.)

The only case relied upon in our courts to sustain the doctrine (*Van Wormer* agt. *The Mayor, &c. of Albany,* 15 *Wend.* 262, *S. C.; In Error,* 18 *Wend.* 168), will be found on a rigid examination of it not to sustain any such principle. From the nature of the pleadings in that case, as they appear in the report of it in the court of errors (*ubi supra*), as stated by the late chancellor (WALWORTH), as he clearly shows, the facts of *the buildings destroyed being a nuisance,* and the *necessity of the use of the means employed to abate it,* were admitted on the record. The only question of fact not admitted, and which formed the subject of the trial, was whether the defendants *destroyed such building by virtue of the ordinance under* which they justified such destruction. That able judge declined to express any opinion upon any other question in the case except those involved in the trial of that issue, but he noticed the fact, as did Ch. J. SAVAGE in the court below (15 *Wend.* 264), that the plaintiff *admitted the fact of the nuisance when heard before the board of health, and only objected to paying the expense of removing it.* Of course the mere absence of any subsequent question of the decision in that case, would not sanction the doctrine alluded to. Nor does the conferring of similar powers by various statutes on boards of health (1 *R. L.* 1801; *R. & K.* 373, § 32; 2 *R. L.* 1813, 54, § 25; 1 *R. S.* 441, § 3), argue anything in favor of their constitutionality, as they may have never been exercised except in cases of admitted nuisances, which any one is authorized to abate at common law. (3 *Black. Com.* 6.)

But the authority and duties of the defendants as a board of health, under the first subdivision of such 14th section of the statute creating them (*N. Y. Sess. L.* 1866, *chap.* 74),

differ so widely from those created under the second of such subdivisions, as to justify the constitutionality of the former, even if the latter were defective. Such first subdivision authorizes such board to enter any business, pursuit, matter or thing, " of or belonging to any one, on their records as a nuisance, and order it specifically to be *abated or suspended, or otherwise improved or purified,*" but not until they have *taken and filed among their records,* what they " *shall regard as sufficient proof to authorize such declaration.*

It provides for a service of such order on parties interested in the business or thing declared a nuisance, and permits them to apply within three days afterwards, or at any time before the execution of such order, to the defendants or their president, for the modification or suspension of such order until a hearing, which they are bound to do (except in case of a pestilence raging), and give such applicant " *a reasonable and fair opportunity* to be heard before them, and present facts and proofs against such *declarations,*" and the execution of such order, or in favor of its modification. They are further required to enter *upon their minutes* " *the facts and proofs*" received by them, their proceedings upon such hearing, and any other proof " they may take ;" and are thereupon empowered to " *rescind, modify or reaffirm* such declaration or order, and require execution of the first, or any new or modified order to be made."

An amendment of such statute by another passed at the same session (*N. Y. Sess. L.* 1866, *chap.* 686, §6), gave the president, in the absence of the board, power to suspend or modify such order, or its execution, and permitted such board " to change or modify any order made under such first subdivision, but *not to increase its stringency,* where no hearing was asked for by the party affected." Although no provision is made in such amendatory statute for serving notice of such modified order.

Such second subdivision authorizes such board to *order or cause* any premises, ground, matter or thing, regarded by it

as in a condition dangerous or detrimental to life or health, to be "*purified, cleaned, disinfected, altered or improved,*" and any substance so alike dangerous or detrimental, to be removed to some proper place. It also provides for the service of such order upon one or more of the owners, occupants, lessees or tenants of the offending premises or subject, or upon one or more of those who were bound to do what such order required to be done. But such order, and service of it, is only required to be made to give the party served an opportunity to do personally what is required of him, so as to prevent its being done by such board at his expense.

No provision is made for any hearing of the parties affected by such order, or taking or preserving any evidence upon which the decision of such board, as to the danger or detriment of such premises or substance, is to be founded.

The right of such board, therefore, to cause premises to be cleaned, or offensive substances removed, rests entirely in the power of the legislature to give unlimited power to such a body to decide without hearing parties interested, and perhaps by inspection only, as to the necessity of purifying premises, or removing offensive matter, which I do not propose to discuss on this occasion, particularly as such powers do not involve the absolute destruction of property.

In regard however to the stoppage of a person's business, or the destruction of property under the first subdivision of such section (§ 14), the legislature have been more careful to place the exercise of such powers within the range of judicial functions.

The 31st section of the act in question, declaring all powers exercised by the board judicial, it is true, would not necessarily make them so, but if there be any room for doubt as to the mode of exercising such powers, or the interpretation of directions as to such mode, the language used in prescribing such mode is to be construed as requiring them to be exercised in a judicial, rather than an executive or ministerial manner; and such mode of exercising them is to be made if pos-

sible, and consistent with any interpretation of the words to conform thereto.

Such board being bound by the 18th section of the statute to keep records of its acts and proceedings, is by the 14th bound to file among them the proof which it is authorized to take, justifying a declaration that the subject of examination is a nuisance, or detrimental to life or health, upon which it is to make a provisional order for its abatement, removal or melioration. They are thus vested with the preliminary right of determining their jurisdiction, for the purpose of a hearing and final adjudication, and their decision upon such jurisdiction is final, if there is any evidence before them tending to sustain it. (*People ex rel. Bodine* agt. *Goodwin*, 5 *N. Y. R.* 568.) Such provisional order may become final, by the failure of the parties interested, and notified to demand a hearing. And whatever objection may be made in cases where no service of notice of the order is made, it would not apply in this case, as the plaintiff was notified.

The statute requires the execution of the order to be suspended on demand of the party notified, and a hearing to be given him upon a *fair and reasonable* opportunity therefor, when he is to be allowed to give such proofs as he has to offer, and the board may also introduce new proofs. Upon such hearing they may modify or rescind such order in an action at law.

The board were then required to " cause the facts in regard to such complaint to be investigated, and the appropriate remedy applied." This resembles greatly the trial and decision of issues in an action.

If private individuals failed to call to their notice peccant employments, premises or substances, such board had a staff of accusers, consisting of ten medical inspectors, to report twice a week on such facts as had come to their knowledge, relative to the purposes of such act. So that abundant means were provided for obtaining the sufficient *proof* which the board were to take, without leaving their office, or uttering

a word themselves of accusation. I cannot come to any other conclusion, than that such a notice of accusation, or obtaining evidence in advance, with such opportunity of being heard, with evidence, and such a notice of final determination, was an exercise of judicial power, and binding, unless prevented by some positive constitutional prohibition.

If the compulsory attendance of witnesses for the accused, if necessary, be required to make proceedings judicial, the board would probably be bound to give him the aid of the power they possess under the 24th section of the statute, to procure testimony. But in this case there is no pretense that any testimony has been lost by that means. If it had been set up properly, this court might have exercised an equitable jurisdiction in obtaining such testimony, and, perhaps, also thereby acquired jurisdiction over the whole subject.

In order to enable such board to obtain the *proof sufficient* for them to act upon, there was no necessity of their becoming active in hunting up testimony. The 21st section of such act required them to keep a book open for public inspection, in which complaints of a sanitary character were to be recorded, signed by the accuser with his name, in which was to be entered the name of the accused, the date, and the remedy suggested. This is not very unlike a complaint.

Possibly the decision upon the hearing, is not a subject of review upon *certiorari*. Although statutes sometimes give the courts to which such writ is returnable, that power. (*Niblo* agt. *Post*, 25 *Wend.* 280, 311 ; *Anderson* agt. *Prindle*, 23 *Id.* 616 ; *Morewood* agt. *Hollister*, 6 *N. Y. R.* 309 ; *People ex rel. Rhoades* agt. *Humphreys*, 24 *Barb.* 521.) Although even there they are bound, if there be some evidence before the inferior tribunal to justify their decision. (*Stryker* agt *Bergen*, 15 *Wend.* 490.) The same rule is applicable to a review upon a like writ, of the evidence upon which the inferior tribunal has passed, in assuming jurisdiction. (*Ex parte Mayor of Albany*, 23 *Wend.* 277 ; *People ex rel. Bodine* agt. *Goodwin, ubi supra ; People* agt. *City of Rochester*, 21

*Barb.* 656.) There can be no pretense, therefore, that jurisdiction can be usurped by the defendants without redress, if they are mistaken in its exercise.

The main objections to the constitutionality of the exercise of power under such first subdivision, are that such proceedings violate " the law of the land," required to be observed by the first section of the first article of the constitution of this state, and are not " due process of law," under the sixth section of the same article. The special points in which they are supposed to deviate therefrom, are six in number, as follows :

1. That the functions of accuser and judge, are blended in the same body.

2. That no process is served, or notice of the proceedings given to parties interested.

3. That the judgment precedes the trial.

4. That the accused is not confronted with witnesses against him.

5. That the testimony is not under oath, nor the ordinary rules of evidence observed.

6. That no means are afforded to the accused to compel the attendance of witnesses.

The remarks already made dispose of the first and last of such objections. Indeed, I am not aware that there is any warrant for assuming that there must be a public prosecution except in cases in which the constitution requires the presentment of a grand jury, in order to make a conviction legal. Prosecuting officers are the creations of statutes, and however expedient, are not indispensably necessary to procure the punishment of offenders. The people of the state are the accusers.

The second and third of such objections are inapplicable to cases of an order made absolute, by the default of a party notified to move to or set aside after notice, or confirmed after a hearing, upon evidence upon both sides. Indeed, they are founded upon the mistaken notion that the first order is the

final adjudication, instead of being either a conditional order and made absolute after a hearing, or neglect to appear after notice and demand such hearing.

The seizure of chattels in an action of claim and delivery, or the issuing of a preliminary injunction order, attachment or order of arrest, would be equally subject to such an objection.

As to being confronted with witnesses, if that applies to the hearing, the board are bound to allow it if their proceedings would otherwise be unconstitutional; and any irregularity in that respect could be corrected on *certiorari*. If oaths are necessary to be administered to witnesses, the same rule would prevail, although I am not prepared to say that an adjuration of a witness, whose form may be varied by law, and is allowed according to the conscience of the party sworn, including the simple affirmation of a member of the society of Friends, is a constitutional requisition to make a trial valid.

In regard to the attendance of witnesses, what I have already said as to that cause of complaint will suffice. And I am inclined to think that it will be found that a power to compel the attendance of witnesses for the accused, will not be found to be part of "the law of the land," mentioned in "*Magna Charta*," and was given in more recent times.

There still remains an objection to be considered, to wit: that no trial by jury is allowed under such statute. The words of the constitution upon that point are, article 1, section 2, that "the trial by jury *in all* cases, in which it has been heretofore used, shall remain inviolate forever." The term "case," in such provisions, has been held to mean the kind of action, prosecution or proceeding, and is not confined to the subject matter. Thus, in the case of *The People* agt. *Duffy* (6 *Hill*, 75), it was held, that a proceeding to compel a husband to support his wife, being a mere preventive proceeding, like giving security to keep the peace, did not require a trial by jury; and that preventive remedies for similar offenses having been used before the adoption of the consti-

tution, obtaining them was not a "*case*," within the meaning of the constitution, in which trials by jury had been used. Although it was held that the adjudication of the magistrate on the subject of the marriage of the parties, although sufficient to compel giving security, was not conclusive.

But, although the judgment of the abatement of a nuisance at common law, "*quad permittat prostenare*," may have required a trial by jury, when demanded, yet courts of equity could always restrain the conducting of any business which was one, without such jury. And that is all which the order as finally modified in this case does. Such objection, therefore, falls to the ground.

These considerations render it unnecessary to pass on the question, whether if the powers of the defendants were constitutional, any irregularity in their exercise, and irreparable injury arising therefrom, required the interposition of the restraining power of this court.

The order appealed from must be reversed, and the injunction order discharged, with ten dollars costs of the motion at special term, but without costs on the appeal.