# D. L. AKWAI *v.* ROYAL INSURANCE COMPANY.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

### SUBMITTED NOVEMBER 21, 1902.   DECIDED DECEMBER 26, 1902.

### FREAR, C.J., GALBRAITH AND PERRY, JJ.

In an action on a policy of fire insurance for loss caused by the spread of a fire started by order of the Board of Health for the purpose of destroying, as being infected by plague, certain previously condemned buildings situated some distance from the insured building, an *ex parte* unexecuted resolution of the Board, adopted after the commencement of the fire, that all the buildings in the block, which included the insured building, were so insanitary and infected by plague as to require destruction, is not even *prima facie* evidence, that the building in question was so insanitary or so much of a nuisance as to be absolutely valueless in the eye of the law so as to entitle the defendant insurance company to judgment.

### OPINION OF THE COURT BY FREAR, C. J.

This is one of the many fire insurance cases that have arisen out of the burning of Chinatown, in Honolulu, on January 20, 1900, by the spread of a fire started under orders of the Board of Health for the suppression of bubonic plague. In this case the only question is that of the measure of the damages, the defendant's contention being that the building was valueless because it had been condemned as insanitary by the Board of Health.

The fire was started by order of the Board for the purpose of destroying certain previously condemned buildings in one portion of the large block in another portion of which, some distance away, the building in question was situated. About 10 o'clock in the morning, after the fire was started, the Board

resolved that all the buildings in this block, including of course the building in question, "the same having been inspected by this Board are in the opinion of this Board infected with plague by reason of many cases of plague having been taking from said block, and in consequence of proximity to a place where a case of plague had occurred, and that it is necessary for the public health and safety that the buildings on said premises should be destroyed and that it is impossible to render them safe for occupancy by fumigation or other means and that such destruction shall be carried out forthwith," also that all such buildings, "same having been inspected by this Board, are in the opinion of the Board insanitary, a source of filth and a cause of sickness, and are incapable of being rendered sanitary by fumigation or any other means, and that it is necessary for the public health and safety that the buildings thereon should be destroyed by fire, and that such destruction shall be carried out forthwith."

These resolutions were made without giving the plaintiff an opportunity to be heard and he was never notified by the Board of their action. No order was given for carrying out the resolution. Meanwhile the fire already in progress got beyond the control of the Fire Department which had it in charge and spread to plaintiff's building, which was burnt at about 2 o'clock in the afternoon.

The Circuit Court after a trial, jury waived, rendered judgment for the plaintiff for the full amount of the policy, $1000, and the defendant now comes here on an exception to that judgment as being contrary to the law and the evidence.

It is admitted that the plaintiff ought to recover the full amount of the policy but for the resolutions of the Board of Health. But it is contended that the resolutions are conclusive evidence that their recitals are true and that as matter of law it is absolutely impossible that a building that is infected with a dangerous disease from which the contagion cannot be removed and the prompt destruction of which is required by the

public safety can have any marketable, merchantable or other pecuniary value.

The question is so novel that naturally no cases have been found by counsel on either side directly in point, and so the arguments have been those of principle and analogy.

The defendant contends in the first place that the general rule, that the measure of damages is the actual value at the time of the fire, applies. But this does not help much. The question remains, what was such actual value in this case? If it was what the building could have been sold for, it might well be contended that some price could have been obtained for it, considering that, so far as appears, no one outside of the Board of Health and its agents knew of the resolution, and that intending purchasers, if they did know of the resolution, might be willing to take the chance of being able to prevent its execution through judicial proceedings or by persuading the Board to revoke or modify it, or might take the chance of being able to recover compensation in case the resolution were executed, especially considering that the building was new and that, so far as appears, no case of plague had occurred in it, and that the resolution was general covering a large area without reference to particular buildings, and that there was at least a question as to its validity in view of the facts that it was adopted without affording the plaintiff an opportunity to be heard, that he was never notified of it, that the statute was not complied with by first ordering the plaintiff to abate the nuisance and that the resolution required the abatement to be in a particular way, etc. If the rule of actual value at the time is applicable and the actual value is ascertained in the usual way, that is, as a question of fact, it would seem that the plaintiff would be entitled to recover something, and it is practically conceded that if he is entitled to recover at all he is entitled to recover the full amount of the policy. Further, the method of ascertaining the value in insurance cases varies according to the circumstances. For instance, a removable building on land held under a lease that is about to expire is valued in cases of this kind

without reference to the fact that it is worth much less for the purposes of removal. *Wash. Mills M'f'g. Co. v. Weymouth Ins. Co.*, 135 Mass. 503. See also Ostrander Ins., Sec. 182. May, Ins., Sec. 424. The defendant's proposition seems to be that the building cannot have any value in the eye of the law under the circumstances. Reference to the rule of actual value does not throw much light on that proposition.

It is further contended that the building could be regarded, after the passage of the resolution, only as a mere mass of infection and a public nuisance and as having ceased to be a building within the meaning of the policy—after the analogy of the case of *Nave v. Home Mut. Ins. Co.*, 37 Mo. 430, in which it was held that there could be no recovery on a policy of fire insurance on a building when the burning did not take place until after the building had fallen and become a mere "congeries of materials." The cases are not analogous, for in the present case the building still remained a building, aside from the question as to how far it had become infected or a public nuisance. If the building was without value, it was not because it was not a building. The Missouri case was based on the fact that the building was not destroyed by fire, not that a "congeries of materials" had no value.

The case is likened also to that of a horse with the glanders, which, it is contended, can have no value in the eye of the law. This comparison also does not hold. By hypothesis in the case of the horse, it had the glanders, while in the present case, the question as to whether the building was infected, or how much it was infected, is one of the questions in issue. Again, if the horse had the glanders it would surely die, but if the building was infected, might it not be disinfected? Need it be destroyed? It is also assumed that a horse with the glanders can as matter of law have no value. On this point that case does not help us out, for it at best merely presents in the case of the horse the same question that we have before us in the case of the building. If the horse were insured against death or disease, its value for the purpose of recovery on the policy would of

course be unaffected by the fact that it had the glanders. *Smith v. People's &c. Ins. Co.,* 173 Pa. St. 15; *Tripp v. N. W. &c. Ins. Co.,* 91 Ia. 278. And even if the Board of Health had resolved after inspection that the horse had the glanders, that would not make it so and would be no defense for killing the horse, if it in fact was not so afflicted. *Miller v. Horton,* 152 Mass. 540. And this brings us to the point on which we base our opinion.

Assuming that the building would be valueless if it were infected by bubonic plague or at least if it were infected to such a degree as to require destruction by fire or other means, the resolution of the Board of Health that it was so infected did not bind the owner in the absence of an opportunity to be heard. The statute (P. L., Secs. 877-879) authorized the Board of Health to cause nuisances to be abated. It did not authorize it to destroy that which was not a nuisance or to make or declare that to be, which was not in fact, a nuisance. Its power to destroy depended on the fact of nuisance, and not on the fiat of the Board. The public safety might perhaps require it in the exercise of the police power to proceed without a hearing in a case of emergency. Its judgment, regarded as in the nature of a judgment *in rem,* might perhaps, unless reversed or modified, determine once for all and as against the whole world the status of the building, that is, that it should be destroyed. But it could not, at least in the absence of an opportunity to be heard, determine that the loss should fall on the owner or bind him as to the intermediate findings upon which the final judgment was based. One such intermediate finding was that the building was infected. See *Miller v. Horton, supra; Cole v. Kegler,* 64 Ia. 59; *Hennesey v. City of St. Paul,* 37 Fed. R. 565; *Hutton v. City of Camden,* 39 N. J. L. 122; *City of Salem v. Eastern R. Co.,* 98 Mass. 431; *People v. Board of Health,* 140 N. Y. 1.

Of course the mere fact that the Board resolved that the building ought to be destroyed or ought to be destroyed by fire, apart from the question of infection, could not relieve the insurance company, if the building were destroyed by fire before

the execution of the resolution. An incendiary or a mob might have resolved the same thing but, however probable it might be that the resolution would be carried out, it could not affect the right to recover on the policy. Indeed, if such a resolution (for destruction, without reference to infection) should be literally carried out by means of fire before the destruction of the building by other fire, that itself would be a loss within the terms of the policy. As we understand it, the contention is, not that the Board resolved that the building ought to be or should be destroyed, but that the building was in fact such a nuisance or so thoroughly infected that it ought to be destroyed, that the resolution was the evidence of this fact, and that a thing that was such a nuisance was valueless or worse than valueless. But, as we have seen, the Board could not conclude the plaintiff on that point without notice and an opportunity to be heard, if it could at all.

It is, however, contended that the resolution on this point, if not conclusive, is at least *prima facie* evidence that the building was a nuisance, and that the presumption arising therefrom was not rebutted. If the resolution were *prima facie* evidence, it might be a question whether there was not enough to justify a finding that it was overcome, considering that the building was new, that the resolution itself seems to indicate that no case of plague had occurred in it and that the resolution was general covering a large number of buildings *en masse*. But, however, that may be, in our opinion the resolution was not even *prima facie* evidence that the building was so infected as to require destruction. Some of the decisions go to the extent of holding that the action of a Board of Health or other appropriate civil authority in a matter of this kind after it has been carried into execution is admissible as *prima facie* evidence for some purposes in an action between the owner and such authorities or their agents, but we do not see how a mere *ex parte* unexecuted resolution of a Board of Health on an intermediate point, which the Board had no authority to adjudicate as an ultimate point, could properly be admitted as even *prima facie* evidence in an

action in contract between others.  See *Mossman v. Gov't.*, 10 Haw. 421.

The exception is overruled and the judgment below affirmed.

*W. A Whiting, F. E. Thompson* and *C. F. Clemons* for plaintiff.

*W. R. Castle* and *P. L. Weaver*, counsel in another similar case, argued for the plaintiff, by permission.

*Robertson & Wilder* and *L. A. Thurston* for defendant.

### CONCURRING OPINION OF PERRY, J.

At the trial in the court below the plaintiff's case consisted in introducing the policy for $1000 covering the building in question, an admission by defendant that the building was wholly destroyed by fire at the time named in the declaration and proof, either by oral testimony or by stipulation of the parties, that the building was erected by the plaintiff within a year previous to the fire at a cost of about $3000, and that at the time of the fire there was other insurance on the building amounting to $1000 covered by another policy issued by the defendant company.  By stipulation filed in this court, the parties declare that it was made to appear to the lower court upon the trial "that if it were not for the circumstances of this case which are claimed by the defendant to control the measure of damages the defendant would concede that the plaintiff is entitled to recover the amount claimed."  The plaintiff having rested, the defendant introduced in evidence three documents: (a) a certified copy of an extract from the minutes of a meeting of the Board of Health held on January 10, 1900, to the effect that the Board had passed a resolution that in its opinion all the buildings in that part of Block 15 bounded by an imaginary line drawn along the Waikiki side of Kaumakapili Church to Kukui St., Kukui St., Nuuanu St. and Beretania St., were infected by plague and that the public health and safety required their immediate destruction by fire; (b) an original letter, dated January 19, 1900, from C. B. Wood, President of the Board of

Health, to Andrew Brown, Fire Commissioner, authorizing the latter to destroy by fire all of the buildings just mentioned; and (c) a certified copy of two resolutions by the Board of Health, passed on January 20, 1900, at 10 a. m., one being "that all of the buildings in Block 15 bounded by Nuuanu, Kukui, River and Beretania streets be considered infected by plague, the same having been inspected by this Board are in the opinion of this Board infected with plague by reason of many cases of plague having been taken from said Block, and in consequence of proximity to a place where a case of plague had occurred, and that it is necessary for the public health and safety that the buildings on said premises should be destroyed and that it is impossible to render them safe for occupancy by fumigation or other means and that such destruction shall be carried out forthwith," and the other, that all of the buildings in that Block, "same having been inspected by this Board, are in the opinion of the Board insanitary, a source of filth and a cause of sickness, and are incapable of being rendered sanitary by fumigation or any other means, and that it is necessary for the public health and safety that the buildings thereon should be destroyed by fire, and that such destruction shall be carried out forthwith." The plaintiff then admitted, as a part of the defendant's case, "that the fire escaped from the limits which the Board of Health ordered to be burned to the premises of plaintiff; that the fire was started under the Board of Health order about 9:30 a. m.; that the resolution condemning the whole block was passed at a meeting of the Board of Health at ten o'clock that morning; that plaintiff's premises were destroyed about two o'clock that afternoon;" and that said premises "were within the block destroyed." With this the case for the defense was closed. In rebuttal, the plaintiff gave testimony to the effect that prior to the destruction of his building he received no notice of the condemnation. It was not shown by any of the evidence that the Board had issued any order for the execution of its resolutions concerning the westerly half of the block.

The defendant's sole exception is to the decision and judg-

ment on the ground that they are contrary to the law and to the evidence, and, thereunder, the only defense is as to the measure of damages, it being undisputed that the defendant is liable if the building was not valueless. The contention is that plaintiff can recover only the actual value of the building at the time of the loss and that, upon the evidence as it stands, the court must rule, as matter of law, that the building had no value, in other words, that the building had no value because (1) the two resolutions above referred to were passed by the Board of Health on the day of the fire prior thereto and (2) the building was infected with plague to the extent stated in those resolutions.

For ascertaining the actual value of a building different methods have been adopted in different cases, varying according to the circumstances. Sometimes such value is declared to be the cost of construction less an amount representing the depreciation due to age. This, perhaps, would be the criterion most favorable to the plaintiff in the case at bar; the building cost $3000 and was practically new when destroyed. No material depreciation due to age was shown or could have been shown. Another method would be to find the income-producing capacity of the building and from that calculate its value. Again, the market value has been suggested as the "actual value." This, I think, is the standard of measurement most favorable to the present defendant.

Let it be assumed,—what is at least doubtful—that the market value is the correct test and that the peculiar conditions relied upon by the defendant can be considered at all as elements in the valuation. The value is to be ascertained as of the time of the loss and in the light of the circumstances then existing as they appeared to intending purchasers. The only circumstance suggested as having a depreciating influence on the price is the passage of these resolutions of the 20th of January. But those resolutions were not passed until ten o'clock on the morning of that day and in all probability were, at two o'clock in the afternoon, known to but a very few, if any, persons aside from the members and officers of the Board, and could not have had any effect upon intending purchasers ignorant of their pas-

sage. As to the mere fact that plaintiff's building was situated in a block in other buildings of which plague cases had been found,—if indeed this can be properly inferred upon the record —it certainly can not be held as matter of law that that fact of itself would cause such intending purchasers, ignorant of the resolutions, to lessen their estimates for purposes of bidding from $3000 to $1000 or even to $2000.

Let it, however, be even further assumed, in favor of the defendant, that the fact of the passage of the resolutions was at two o'clock known in the community generally. It is, of course, easy to understand that that fact would have a depressing effect upon the selling price. It may also be assumed in this connection that the Board of Health had the power to pass the resolutions at the time and in the manner in which it did pass them and that the resolutions would, as to any declarations on the subject of infection by plague, be conclusive and binding on the plaintiff in any proceedings thereafter had between him and the Board of Health or its members. It would at least be equally true that the Board would have the like power to set aside its findings of fact and to withdraw or rescind its resolutions. This last mentioned fact was, as well as the first, an element to be considered by intending purchasers; and, while it may be that many would have been deterred from bidding because of the passage of the resolution, it may well be that others would have been found able and willing to pay a substantial sum for the building, assuming the risk as to showing to the satisfaction of the Board that the building was in fact uninfected or that it could be disinfected by agencies other than fire and as to persuading it to rescind its former action. Who can say that that sum would not have been as much as $100 or $1000 or as much as $2000? Can this Court say so, as matter of law? I think not.

It is further contended that the building was valueless because it was so infected with plague that it could not be disinfected except by destruction by fire. As to this also we must look back to the facts as they existed at the time of the fire and as they appeared to intending purchasers. It may even be

still further assumed that the building was in fact infected with plague. However conclusive the resolutions were upon the plaintiff, they clearly could not make or alter the facts as to the existence or the degree of the infection, so far as intending purchasers were concerned. Such purchasers,—I refer now to those willing to take chances as to securing a rescission of the resolutions—may well have differed with the Board as to the possibility and practicability of disinfecting without burning. They may well have firmly believed that the plaintiff's building, new as it was and with no case of plague traced to it or charged against it, was capable of being disinfected and rendered clean and safe by less costly methods. That was purely a matter of opinion upon which men had a right to differ. Even with these additional assumptions against the building, it cannot, in my opinion, be said, as matter of law, that no purchaser could have been found able and willing to pay as much as $100 or $1000 or even $2000 for the building, much less that no bid at all could have been secured. The defendant concedes, as above stated, that if the trial court was not bound, as matter of law, to find that the building was valueless, the plaintiff is entitled to recover the full amount claimed.

If the test of income-producing capacity is applied, the same result is reached. From the mere fact of the passage of the resolutions it does not necessarily follow that the plaintiff's building at once ceased to have any earning capacity or rental value. The owner himself, even though the resolutions while in force were conclusive upon him as to the facts recited in them, may well have entertained the hope of being able to secure their revocation, and tenants, both actual and prospective, may, in spite of the declarations of the resolutions, have been found who regarded the building as fit for occupancy or as capable of being disinfected and rendered habitable and who were willing to pay rent for the use of it even though at reduced rates. The court can not, in my opinion, upon the mere proof of the resolutions, undertake to say as matter of law that no such tenants could have been found and that no rental whatever could have been obtained.

No reference has been made to the danger to the plaintiff's building at two o'clock in the afternoon from the advancing conflagration or from the fire declared by the Board of Health to be necessary, because fire was the very peril insured against and one, therefore, not to be considered as an element in the measure of damages.

For these reasons I am of the opinion that from the mere proof of the two resolutions of the Board of Health it cannot be held as matter of law that plaintiff's building was valueless at the time of the loss, and that there was sufficient evidence to support the decision and judgment and concur in the conclusion that the exception should be overruled.