J. ALFRED MAGOON, EMMELINE M. MAGOON, JULIA H. K. ANDERSON, JOHN HENRY MA-GOON, ALFRED K. MAGOON, EATON H. MA-GOON, CATHERINE K. HUSTACE, MARMION M. MAGOON, EMELEEN M. TYLER, MELLIE E. HUS-TACE, CECIL BROWN, TRUSTEE OF THE ES-TATE OF KALEIPUA KANOA, A. B. JOHANSON MILL COMPANY, LIMITED, AN HAWAIIAN COR-PORATION, AND HUSTACE-PECK COMPANY, LIMITED, AN HAWAIIAN CORPORATION, v. LORD-YOUNG ENGINEERING COMPANY, LIM-ITED, AN HAWAIIAN CORPORATION, AND CHARLES R. FORBES, SUPERINTENDENT, DE-PARTMENT OF PUBLIC WORKS, TERRITORY OF HAWAII.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED OCTOBER 15, 16, 17, 1914. DECIDED NOVEMBER 27, 1914.

ROBERTSON, C.J., QUARLES, J., AND CIRCUIT JUDGE WHITNEY IN PLACE OF WATSON, J.

CONSTITUTIONAL LAW—*police power—right to trial by jury—due process of law.*
    The validity of Chapter 83 of the Revised Laws, relating to the improvement of lands which are in an insanitary or dangerous condition, and deleterious to the public health, as determined in *Brown* v. *Campbell,* 21 Haw. 314, reaffirmed.
HEALTH—*insanitary lands—applicability of R. L. Chap. 83 to improved lands.*
    Said chapter is not limited in its operation to vacant lands. There is no exception in favor of lands upon which buildings have been erected though their erection was not in violation of law and the buildings themselves are in good condition. Any loss or expense to which the owner may be subjected in connection with buildings upon lands which are required to be filled in must be regarded as incidental to the exercise of the power to require the abatement of insanitary conditions.

Magoon v. Lord-Young Engineering Co., 22 Haw. 327.

SAME—*owner—life tenant—remainderman—right of owner to notice under R. L. Secs. 1026 and 1027.*

The word "owner" as used in R. L. Chap. 83, means one having a present interest in land with the right of possession other than a mere tenant or temporary occupant. A tenant for life is such an owner. A remainderman is not. An owner is not affected by proceedings instituted under the statute in the absence of notice given as provided in sections 1026 and 1027. Remaindermen would be entitled to be heard in another proceeding upon the claim, if it be made, that the operation proposed to be effected on the land is without authority of law and threatens unjustifiable injury to the inheritance.

SAME—*sufficiency of notices—process—judgment—certainty.*

The notice required to be given under the statute serves the purpose of process by means of which jurisdiction of the land owner is obtained, and such notice may become, and, in the absence of an appeal, does become what, in effect, is a final judgment. It must, therefore, be certain. A notice to a land owner to fill his land "to such grade that the surface of said piece of land when so filled in will be, as near as may be, in the same plane with the established grades of the streets nearest to said piece of land" when the grades of such streets have not been legally established is uncertain and insufficient, and is not to be regarded as capable of being rendered certain by the fact that there were maps in possession of the public authorities and available to inspection which showed the grades contemplated, such maps not having been referred to in the notice.

SAME—*effect of failure of owner notified to appeal—findings of board of appeal—questions of law and fact—nuisance.*

The question whether a thing may or may not be a nuisance within some provision of law must be settled as one of fact, and not of law. Upon a hearing before the appeal board, if an appeal be taken as allowed by the statute, the property owner could contest the finding of the board of health that his premises are in an insanitary or dangerous condition, and the recommendation that they should be treated in the manner outlined in the notice. The finding of the appeal board would be conclusive and binding if there was any substantial evidence to support it. But the land owner would be entitled to be heard in court on the contention that his land, not being in an insanitary condition or deleterious to health, and there being no facts upon which a conclusion that it was in such condition could rest, the board of health had exceeded its powers and proceeded without jurisdiction, as such contention would raise a question of law.

SAME—*propriety of hydraulic method to fill land, and of the material thereby used—vacant land—occupied land.*

In filling and raising the level of insanitary land through proceedings under the statute, it is within the discretion of the superintendent of public works to contract for the filling of vacant lands by the hydraulic method and with the material used by that method in the manner described in this case. But where, in case land is occupied, such method would cause loss through the interruption of the use of premises for business or other purposes which might be avoided by following some other reasonable method, the hydraulic method is subject to objection by the land owner. If objection be made the land owner would assume the consequences of insisting on a more expensive fill. The material used in the hydraulic method held not to be injurious to lands situated as those of the Kewalo district in Honolulu.

DEEDS—*instrument testamentary in character—reservation of life estate.*

A deed of land containing operative words of present grant is not inoperative as being testamentary in character because of the reservation therein of life estates to the grantors nor because it contains a recital that the land should, upon the death of the grantors, go to the grantees "share and share alike."

INJUNCTIONS—*right to injunction as affected by laches—legal right.*

Where an injunction is asked in support of a strict legal right, the party is entitled to it if his legal right is clear; mere delay unaccompanied by circumstances constituting an estoppel will not defeat the remedy unless it has continued so long as to defeat the right itself. That expenditures have been made will not defeat the right to an injunction if the party otherwise is entitled to it.

OPINION OF THE COURT BY ROBERTSON, C. J.

This is an appeal from a decree made by the third judge of the circuit court of the first circuit, sitting in equity, dismissing the bill of complaint in a suit for an injunction to restrain the respondents from filling and raising the grade of certain parcels of land owned by the complainants and situated at Kewalo, Honolulu.

It appears that at the time of an outbreak of cholera which occurred in Honolulu in the early part of 1911, bacilli of cholera were discovered in a pond upon the land of the Kanoa estate lying below King street near Ward avenue, and that the lands of the complainants, together with other lands situated in the

locality bounded by King street, Ward avenue, Ala Moana and South street, comprising a total area of about two hundred acres, had been found by the board of health of the Territory to be deleterious to the public health in consequence of being low and below "the established grades of the streets nearest thereto" and at times covered or partly covered by water and improperly drained and incapable by reasonable expenditure of effectual drainage, and that said lands were in an insanitary and dangerous condition. This was reported by the board of health to the superintendent of public works with the written recommendation of the operation deemed advisable by the board to improve said lands, to wit, "That said lands be put in a sanitary and safe condition by improving the same in such manner as will effect such purpose, and more particularly that the same be filled to such grade as will be necessary for that purpose, and that in the opinion of this board such filling in should be to the following grade, to wit: to such grade that the surface of said piece of land when so filled in will be, as near as may be, in the same plane with the established grades of the streets nearest to said piece of land." And the superintendent was requested to take the necessary steps provided by law, and more particularly by Chapter 83 of the Revised Laws, as amended in 1911, to cause the lands to be so improved. Thereupon the superintendent sent notice to the property owners, enclosing a copy of the letter received by him from the board of health, and notifying the owners "to begin within twenty days from your receipt hereof to put said piece or parcel of land in sanitary and safe condition by improving the same in such manner as will effect such purpose, and more particularly that you cause the same to be filled in to such grade as will be necessary for that purpose, to wit, to such grade that the surface of said piece of land when so filled in will be, as near as may be, in the same plane with the established grades of the streets nearest to said piece of land," and that "in case you fail to begin work as aforesaid on the improvements of said piece of land within twenty days, and to com-

plete such work within sixty days from your receipt of this notice, such work or so much thereof as. may remain undone will be done by the Territory at the cost of the land benefited thereby." The principal features of Chapter 83 of the Revised Laws were summarized in the case of *Brown* v. *Campbell,* 21 Haw. 314, and it will not be necessary to set them out here. None of the complainants appealed from the findings or recommendation made by the board of health nor did they comply with the directions· given in the notice of the superintendent of public works for the improvement of their lands. On May 23, 1912, the superintendent entered into a contract with the Lord-Young Engineering Company, Limited, the lowest bidder for the work, for the filling in of the area in question, the contract permitting the use of sand, coral and material dredged from the harbor or reef and the depositing of the same upon the land by the hydraulic method. A few of the property owners filled their premises with other material, but° most of the work has been done by the contractor by the hydraulic method under the contract referred to. The contractor was about to proceed with the filling of the lands of the complainants by the same method when the present suit was instituted. After the bill was dismissed by the circuit judge an injunction was allowed by the chief justice restraining the prosecution of the work pending the determination of this appeal.

The issues raised, tried and argued involve the validity of the statute, and its applicability to improved property; the legality of the action of the board of health and the superintendent of public works; the sufficiency of the notices served on certain of the complainants; the right to notice of some of the complainants to whom notice was not given; the effect of the failure of the complainants who received notice to appeal from the findings and recommendation of the board of health as allowed by the statute, or to comply with the requirements imposed by the notice of the superintendent; the validity of the contract of the Lord-Young Engineering Company, and the pro-

priety of the hydraulic method of filling, and of the material used; also the question of laches and estoppel, and the right of the complainants to injunctive remedy. Voluminous testimony was taken at the hearing and numerous exhibits were filed in the court below, and the case has been exhaustively briefed in this court.

The circuit judge held that under the decision of this court in Brown v. Campbell the failure of the complainants to take advantage of the appeal permitted by the statute foreclosed them from litigating in the case at bar any question, either of law or fact, which they might have presented to the board of appeal. He also held that under the circumstances shown by the evidence the material employed by the contractor and the manner of its application was desirable, proper and adequate. On the question whether the Magoons, other than the parents, J. Alfred and Emmeline M. Magoon, were entitled to notice, the circuit judge held that their interests in the premises are "too speculative, remote and contingent to demand or require" that any notice should have been given them. Several questions have been argued in this court which were not expressly dealt with in the decision of the circuit judge.

In the case of Brown v. Campbell this court held that Chapter 83 of the Revised Laws is a health measure enacted in pursuance of the police power; that in providing that the work of improvement of lands which are in an insanitary or dangerous condition shall be done by and at the cost of the owner of the land, or, in case he refuses to act, by the government at the owner's expense, and authorizing the sale of the land to satisfy the lien imposed thereon for the amount of the cost of the improvement and the expense of foreclosure and sale, does not constitute or provide for the taking of private property for public use without just compensation in violation of the Fifth Amendment of the Constitution; that in the proceeding provided for by said chapter the land owner is not entitled, under the Seventh Amendment of the Constitution, to a trial before a

jury on the question whether his land is in an insanitary condition or deleterious to the public health; that the provisions of said chapter, requiring the giving of notice to the land owner of the decision of the board of health as to the condition of the land and of the nature and extent of the improvement required, and allowing an appeal from such decision to a board appointed by the circuit court, whose decision shall be final, with the opportunity to the land owner to be heard before such board of appeal, constitute due process of law, notwithstanding such board is not empowered to compel the attendance of witnesses or to administer oaths; that a land owner who has received the notice as provided for in the statute, pays no attention to the notice, does not claim that his land is not in the condition described in the finding of the board of health, and takes no steps to abate the nuisance, is not in a position to claim that he is absolved from taking any action because the notice served upon him may have been too precise; and that the provisions of the statute do not constitute a delegation to an administrative board of the power of taxation in contravention of the Organic Act.

Present day health and sanitary problems are such that courts should be prepared to go to the limit of legal authority in recognizing the importance and sustaining the validity of proper legislation designed to protect the community from pestilence and epidemics of disease. "With the growth of commerce and development of traffic with distant communities, and with the increase of population in trade centers, the importance of the subject increases, and modern experience shows that private convenience and individual freedom of action are required to yield to the public good in respects where formerly there was observed no necessity for legislative interference." *Territory* v. *Hop Kee,* 21 Haw. 206, 208. "It has very properly been held that powers conferred upon boards of health to enable them to effectually perform their important functions in safeguarding the public health should receive a liberal construction." *Territory* v. *Araujo,* 21 Haw. 56, 60. Nothing advanced in the way of

argument or authority by counsel in the case at bar prompts us to qualify anything that was ruled in *Brown* v. *Campbell*, and we are satisfied that that case should be adhered to as to all points raised on this appeal which were there decided. But from what has been stated it will be observed that there are a number of questions presented here which were not involved in the former case.

The applicability of the statute to improved property. The evidence shows that upon the lands of the complainants are numerous structures, such as a large tenement building, a steam laundry, a planing-mill, stables, and a large number of small cottages, the floors of many of which structures would be below the level of the ground should the lots be filled up to the grade called for by the contract of the Lord-Young Engineering Co. Counsel for the complainants contend that the statute relates to the improvement of conditions on vacant lands only and was not intended to apply to lands upon which buildings have been erected; and that where, as here, the proposed operation would impair the usefulness and value of the buildings if they should be left below the surrounding surface, or necessitate the expenditure of large sums of money to raise them, it amounts to an illegal taking of property. The statute makes no reference to buildings or improvements upon lands which may be brought under its operation, but, on the other hand, its language is general and improved lands are not excepted from its provisions. We are not at liberty to read into the statute an exception in favor of lands upon which buildings have been erected though their erection was not in violation of any statute or regulation of the board of health. Nor can we assume that it was the intention of the legislature that lands which are in an insanitary condition and deleterious to the public health are to be exempt from renovation merely because there are buildings on them even though the buildings themselves are in good condition. We think that any loss or expense to which the owner may be subjected in connection with buildings upon lands which

are required to be filled in must be regarded as incidental to the exercise of the power to require the abatement of the insanitary conditions. The supreme court has made clear the distinction between an incidental injury to rights of private property resulting from the exercise of governmental powers, lawfully and reasonably exerted for the public good, and the taking, within the meaning of the Constitution, of private property for public use, holding that "uncompensated obedience to a regulation enacted for the public safety under the police power of the State is not a taking of property without due compensation." *New Orleans Gas Co.* v. *Drainage Com.,* 197 U. S. 453; *C. B. & Q. Railway* v. *Drainage Com.,* 200 U. S. 561; See also *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Manigault* v. *Springs,* 199 U. S. 473, 484; *Jamaica Pond Aqueduct* v. *Brookline,* 121 Mass. 5. In *Widemann* v. *Thurston,* 7 Haw. 470, it was held that injury to property caused by changing the grade of a street so as to render warehouses on abutting land unsafe and impracticable for use is not a taking of property for which compensation must be made. And the fact that great expense may result to the individual does not make a police regulation invalid. *Woodruff* v. *N. Y. etc. R. Co.,* 59 Conn. 63, 93. Especially should this be so where, as under our statute (Sec. 1033), if the land is sold to satisfy the lien for the cost of the operation the owner is to be paid, in any event, the value of the land as shown by its last previous assessment for taxation. This would include the value of improvements.

As to the right of land owners to notice. Section 1026 of the Revised Laws makes it the duty of the superintendent of public works to serve upon the owner or occupant of the land a copy of the finding and recommendation of the board of health, and to notify him that in case of his failure to begin the work within twenty days or such further time as may be reasonable in special cases, and to complete it within a reasonable time to be named, the work will be done by the Territory at the cost of the land benefited. Section 1027 provides that "Service of such

notice upon an owner in person, if within the Territory, or upon his agent if without the Territory, or upon the occupant of such land if the owner is unknown, or upon the guardian if the owner is a minor or person under guardianship * * * shall be deemed good and sufficient service." There are also provisions for service upon non-residents, and where the land is unoccupied and the owner unknown. The title to the "Magoon" lands is held under a deed dated January 3, 1908, by which J. Alfred Magoon and Emmeline M. Magoon, his wife, for the consideration of one dollar, conveyed to their children, J. H. Kamakia, John H. N., Alfred K., Eaton H., Mary Catherine, Marmion M. and Emeleen M. Magoon, the premises in question, but "Reserving to the grantors the right to take and receive all the rents, issues and profits thereof during their joint lives and the life of the survivor of them, the grantors to pay all the taxes, assessments and governmental charges thereon that shall be payable by any law now in force or that shall be payable by any law hereafter enacted." The deed contains a recital, "That whereas John Magoon did convey to the grantor J. Alfred Magoon, certain of the lands hereinafter described with the understanding and agreement that after the death of said John Magoon, the grantors should take and enjoy all the rents, issues and profits thereof for life, said lands upon their death to go to all the grantees share and share alike." Counsel for the appellees contend that the instrument is testamentary in character and passed no present interest to the grantees. We think the recital has no effect on the construction or operation of the deed. It merely states the motive for its execution. The operative words used were "give, grant, bargain, sell and convey," and their effect is not to be nullified or qualified by a recital which after all is not inconsistent with those words when taken in connection with the reservation. 1 Jones on Real Prop. Sec. 249. The fact that the grantors reserved life estates did not prevent the vesting at once of the remainder in the children. The deed was a good conveyance of the fee to the

grantees subject to the joint life estate in Mr. and Mrs. Magoon. *Puukaiakea* v. *Hiaa,* 5 Haw. 484; *Keliiilihune* v. *Vierra,* 13 Haw. 28; *Cable* v. *Cable,* 146 Pa. St. 451; *Knowlson* v. *Fleming,* 165 Pa. St. 10; *Bass* v. *Bass,* 52 Ga. 531. Of the parties to this deed the only one shown by the record to have been served with notice by the superintendent of public works was the father, J. Alfred Magoon. Mrs. Magoon, as the owner of an undivided present interest in the premises, was as much entitled to notice as her husband. The action taken by the board of health and superintendent of public works, therefore, in no wise affected her or her interest in the lands mentioned in the deed. The proceedings were, as to her, a nullity, and she is entitled to an injunction to restrain the proposed operation on the lands in which she has such interest.

Counsel for the appellees argue that the evidence shows that J. Alfred Magoon was the agent of all parties having interests in the lands described in the Magoon deed as to all matters concerning those lands. The testimony shows that he had the active management of the property, though he generally consulted with the members of his family in regard thereto; that he attended to the renting of the buildings; that he returned the property for taxation in his own name, and otherwise acted generally as the owner of the property. The contention is that if the Magoon children have such interests in the land as to require that they should be notified of any proposed action under Chapter 83 of the Revised Laws the notice to their father, their agent, was notice to them and that they were bound by it as fully as though they had been individually served, and that as to such of the children as are minors, notice to their father as their natural guardian was sufficient. Notice to an agent as to matters within the scope of his employment or authority is notice to his principal. But we are not dealing here with the mere matter of notice in the sense in which the term is used in the law of agency. The notice which the statute requires to be served on land owners by the superintendent of public works is

process, and serves the purpose of original process of a court to obtain jurisdiction over the person of the party to be bound by the adjudication.   Service of process upon one of several persons owning interests in land is not service upon the others. By the service of the notice on J. Alfred Magoon jurisdiction was acquired over him alone.   See *Dowsett Co.* v. *McCandless,* 19 Haw. 430.   We are of the opinion, however, that service of notice on the Magoon children was not necessary to the maintenance of the proceeding for the improvement of the land.   We believe that the word "owner" in the statute means one having a present interest in land with the right of possession other than a mere tenant or temporary occupant.   It is a general term the precise meaning of which depends on the nature of the subject-matter and the connection in which it is used.   27 A. & E. Enc. Law (2 ed.) 234; *McKee* v. *McCardell,* 22 R. I. 71; *Coombs* v. *People,* 198 Ill. 586.   The statute furnished authority to deal with existing insanitary conditions, and one who, as a remainderman, has not and never had the right of immediate possession, is powerless to remedy them.   Hence the intention of the law makers must have been that the notice is to be served upon the person who, as owner, is in control of the land. The lien for the cost of the improvement would attach only to the interest of such owner.   The remaindermen would not be parties to the proceeding which has for its object the remedying of the conditions complained of by the board of health, and would have no right to be heard on the question whether the land is in an insanitary condition.   Nevertheless, we are of the opinion that remaindermen would be entitled to be heard in another proceeding upon the claim, if it be made, that the operation proposed to be carried out is without authority of law and threatens unjustifiable injury to the inheritance.   And we hold that the Magoon children are entitled to be heard in this suit upon the questions whether, as they and their cocomplainants aver, the public authorities have in this matter mistaken or deliberately exceeded the powers conferred on them by the statute,

Magoon v. Lord-Young Engineering Co., 22 Haw. 327.

have proceeded without jurisdiction, and that the character of
the material which the contractor proposes to use in raising the
level of the land is such as will materially and unnecessarily
injure the land, and is not within the authority of the superin-
tendent of public works to permit to be used. This question
will be discussed later. It is enough to say at this point that
the Magoon children stand on the same footing in this connec-
tion as does their father. They hold their title to the land sub-
ject to the lawful exercise of the police power as does he. If
the proposed filling of the land is authorized by law under the
circumstances and in the manner it has been contracted for, the
Magoon children will not be entitled to have the operation re-
strained merely because it will permanently injure the land and
subject them to loss. They, as well as the other property own-
ers, may be subjected to such damage as is incidental to the
proper enforcement of the law.

As to the sufficiency of the notices. The complainants, oth-
er than Mrs. Magoon and the Magoon children, were served
with notice in the manner and form above explained. It is
contended that the notices were defective, insufficient and of no
effect because they did not prescribe the manner in which the
filling should be done; that the time allowed for the completion
of the work directed to be done was insufficient and unreason-
able; that the grades of the streets within the area mentioned
were never legally established; that the grade commission which
pretended to act was not legally constituted, and that the com-
mission illegally delegated the work of establishing the street
grades to others.

The courts in some cases have held that a property owner
cannot be compelled to abate insanitary conditions in a particu-
lar way but may do it in any effectual manner. Whether such
cases apply where, as here, the statute requires that the board
of health shall provide "a brief recommendation of the opera-
tion deemed advisable to improve such land," and that if the
plan be not changed by the appeal board, and the owner fails

to proceed with the work, the superintendent of public works shall cause it to be done, may be doubtful. But here, the owners were notified of the general nature of the operation required to be done, and we think the notices were not defective in that the precise way in which the work should be done was not laid down.

The complainants claim that it was impossible to do the work required of them within the time allowed them to do it as specified in the notices. But if this were the only defect, and if the complainants were ready and willing to comply with the order if sufficient time were allowed, good faith on their part would require them to apply for an extension of time. We think that where a property owner who has received due notice to remedy deleterious conditions on his premises does not intend to comply therewith he cannot afterwards, with any show of good faith, ask that the superintendent of public works be restrained from doing the work in accordance with the requirements of the statute, merely because the time allowed by the notice, though substantial, was too short.

Chapter 54 of the Revised Laws, relating to street and sidewalk lines and grades, Honolulu (repealed in 1913), provided for the appointment by the governor of "a commission of three civil engineers * * * to establish the grades of all streets * * * in said city of Honolulu;" that "it shall be the duty of the commission * * * to carefully survey, level and grade the streets * * * as they may be directed by the superintendent of public works and make proper and complete plans and profiles of the same, with the grade lines and widths recommended by them, distinctly marked thereon. Such plans and profiles shall be signed by the commissioners, and the superintendent of public works shall countersign the same, and cause the official seal of the department of public works to be affixed thereto;" that such plans and profiles "shall be known as the official map showing grades and sewers of the streets * * * and they shall be preserved in the archives of the office of the superintendent * * *

and shall be open, at all times, to the inspection of parties interested without charge." It is contended that in the attempt to establish the grades of the streets within the Kewalo district the statute, though not strictly adhered to, was substantially followed. We think that no importance is to be attached in this suit to the facts that the three persons appointed as grade commissioners were not all civil engineers, and that they had the services of assistants in doing the work. The commissioners were at least *de facto* officers, which is enough upon a collateral attack; and it was within their discretion to employ assistants, the work being done under their direction and supervision and adopted by them. It appears, however, that no profiles were made of the streets in question, and that the final map which the commission prepared, and upon which the grades were marked, the same being designated "Proposed grades for a section of Kakaako bounded by King St., Ward Ave., Ala Moana. and South St., Jan. 11, 1912," though signed by the grade commissioners was not countersigned by the superintendent of public works, nor was the seal of his department affixed, as required by the statute. Furthermore, except as to the A. B. Johanson Mill Co., Limited, the notices to fill the lands were served upon the parties prior to January 1912. Also, it appears that the grade commission was set in motion, not by the direction of the superintendent, but by the request of the president of the board of health, made on May 15, 1911; and that two other maps showing the grades recommended by the commission were made and delivered to the superintendent of public works and the board of health on or about August 24, 1911. Neither of these maps was signed by the grade commissioners or the superintendent of public works, though it appears that upon them were based the notices sent to the property owners, as well as the contract of the Lord-Young Engineering Company.

There was not even a substantial compliance with the statute and we are obliged to say that the grades of the streets in ques-

tion were never legally established under R. L. Chap. 54. But it is urged by counsel for the appellees that the legal establishment of the street grades was not a necessary prerequisite to action by the board of health, and that the grade contemplated by the board and referred to in the notices could easily have been ascertained by the complainants by inquiry, as, the evidence discloses, was done by other property owners upon whom similar notices were served. No doubt the public authorities could require the filling in of insanitary land even though the nearest streets had never been given an official grade, provided the notice be sufficiently certain as to what is required to be done by the owner. Under our statute the notice given by the superintendent of public works requiring compliance with the recommendation made by the board of health not only serves the purpose of process upon the land owner, but, upon appeal, may become, and, in the absence of an appeal, necessarily becomes, what, in effect, is a final judgment. Hence, it is necessary that such notice should, as to the nature of the operation required to render the land sanitary, be sufficiently certain to apprise the owner of what is required of him. This goes to the very root of the notice and order, for if they were void for uncertainty the parties are in the position of persons without any notice whatever. It is argued that the maxim *certum est quod certum reddi potest* applies—that the uncertainty in the notice could have been removed by inquiry at the office of the board of health or of the public works department. Cases applying the maxim are cited in which deeds, awards and judgments which referred to other deeds, pleadings or other documents to supply something lacking were held to meet the requirement of certainty. In those cases, however, the instrument attacked invariably contained within itself reference to the document or paper which was relied on to supply the missing matter. But in this case the notices served on the property owners did not refer to any map or record from which could be ascertained what grades the persons notified were required to fill their lands

to. We hold the rule to be that where reference to a map or record is necessary to render the terms of a judgment certain under the maxim *certum est quod certum reddi potest* such map or record must be mentioned and identified in the judgment itself. We have found no authority to support the notion that that is certain which may be rendered certain by an informal and voluntary inquiry. It is said that it was sufficient that, as shown by the evidence, the grades of the streets bordering the Kewalo district on three sides, namely, King street, South street and Ala Moana, had previously been legally established, even though the intermediate intersecting streets had no official grades, and that the notices could be construed as referring to those streets. We think the notices which specified the plane of the streets "nearest to said piece of land" could not be so construed. Finally, it is contended that any defect or irregularity in the establishing of the grades of the intersecting streets was cured and the grades as attempted to be established were validated by Act 130 of the Session Laws of 1913. That act recited that a contract had been entered into with the Lord-Young Engineering Company for the filling of certain insanitary lands at Kewalo and vicinity; that certain of the owners of lands covered by the contract had filled in, or were desirous of filling in, their lands; and that it was desired to reduce the grade of the locality. It then authorized the superintendent of public works to contract with said company, without calling for tenders, for the filling in of other insanitary lands in Honolulu in an amount not exceeding the estimated reduction that might be caused in the fill under said contract of May 23, 1912, either by acts of the land owners or by the reduction of the grade. It was the purpose of the act to allow a change to be made in the terms of the Lord-Young Engineering Company's contract, but, so far as we are able to discern, was not intended to be a curative act to validate grades of streets that had not been established in the manner provided by law, and we think it should not be so construed. Even if the act be

capable of such construction it would not operate to render certain the ambiguous notices served on the land owners long prior to its enactment. Conceding the correctness of the observation made in *Bittinger* v. *Bell,* 65 Ind. 445, 459, cited by the appellees, that "It is not to be expected that the orders of a board of commissioners will be drafted with that degree of legal accuracy and precision of statement usually found in the orders, decrees and judgments of the circuit court," it does not follow that such orders may be wholly wanting in the essential element of certainty and yet be valid. We hold that the notices issued by the superintendent of public works, which, if otherwise regular would have become final orders, were, because of their uncertainty, fatally defective and of no binding effect upon those on whom they were served.

As to the effect of the failure of the complainants who received notices to take an appeal. The provisions of the statute. regarding an appeal from the findings and recommendation of the board of health are, in substance, as follows: Section 1028 allows "any owner or occupant of the land sought to be improved" to "file an appeal from the decision of the board of health condemning the land as deleterious to the public health, or from its decision as to the nature and extent of the improvements to be made, with the superintendent of public works, whereupon the superintendent shall transmit the appeal to the circuit court of the circuit wherein the land is situated." Section 1029 provides that "said court shall thereupon appoint three disinterested persons who shall sit as a board to hear and determine whether or not the land is deleterious to the public health and whether improvements of the nature designated in such notice are required, and if such improvements are not required, what, if any, improvements are required in order to render such land sanitary. The decision of a majority of the board as to the necessity and nature and extent of the improvements shall be final and conclusive upon all parties in interest. The board shall appoint a time and place for hearing, first giv-

ing notice thereof to the president of the board of health, the superintendent of public works, and to the owner or occupant of the land in question." Section 1029A, enacted in 1911 (Act 112), provides that "The superintendent of public works shall transmit to the board with such appeal a plan of the lands to be improved, showing, so far as practicable, the names of the owners and occupants thereof, together with a statement showing the extent and nature of the contemplated improvements, and an estimate of the cost thereof." Counsel for the appellees contend that the complainants "not having availed themselves of the statutory appeal, have lost all right to question the findings of the board of health, and the statute does not seem susceptible of any other construction." The contention of counsel for the complainants is that the appeal board could not consider any question of law; that it could only pass upon facts; and that as to the facts its decision could not be made final because the question what is and what is not a public nuisance is a judicial one upon which the party is entitled to be heard in court. In their brief counsel cite a number of cases in which it has been held that a thing cannot be declared a nuisance which is not so in fact. The principle may be conceded, but most of the cases cited were dealing with municipal ordinances, between which and statutes, as pointed out in Freund on the Police Power, Sec. 142, there is some difference, a broader power being conceded to rest in the coordinate branch of the government than in the local authority. Again, most of the citations are of cases in which the alleged nuisance had been subjected to summary abatement, either without notice to the owner, or, if with notice, without the right of appeal before the abatement. Cases of that class are to be distinguished from that to which the case in hand belongs.

Where a nuisance is abated or property is destroyed by the public health authorities without notice to the owner and an opportunity to be heard the finding or declaration of the board on the question of nuisance is not binding on the owner, but

the whole question is open for review in the courts. *Akwai* v. *Royal Ins. Co.*, 14 Haw. 533, 537; *North American Storage Co.* v. *Chicago*, 211 U. S. 306, 316; *Salem* v. *Eastern R. Co.*, 98 Mass. 431, 447. But a statute which provides for an appeal from the findings of the board of health to an impartial board, and a hearing before action is taken, is not invalid because it makes the decision of the appeal board final without recourse to the courts. *Hibben* v. *Smith*, 191 U. S. 310, 321; *State* v. *Stewart*, 74 Wis. 620, 629; *Ross* v. *Supervisors*, 128 Ia. 427, 439. "The claim set up on the part of the lot owner, that there can be no due process of law under which an assessment can be made which does not provide for a review of such assessment and a hearing by a court, is not tenable." *Hibben* v. *Smith*, supra. Under a statute of New York containing provisions similar to those contained in our statute except that the hearing provided for was to be had before the board of health itself, it was held that the provisional order made by the board became final by the failure of the party, after being notified, to demand a hearing. *Reynolds* v. *Schultz*, 34 How. Pr. 147, 159. By enacting Chapter 83 of the Revised Laws the legislature assumed—and in effect declared—that land which by reason of its situation and condition, though through natural causes, is in an insanitary and dangerous condition and deleterious to the public health is a nuisance. *Valentine* v. *Englewood*, 76 N. J. L. 509, 521; *Harrington* v. *Board of Aldermen*, 20 R. I. 233, 249. See also, *Bowes* v. *Aberdeen*, 58 Wash. 535; *Charleston* v. *Werner*, 17 S. E. 33. This, we held in *Brown* v. *Campbell*, the legislature had the right to do. The question whether a thing may or may not be a nuisance within some provision of law must be settled as one of fact, and not of law. *Grossman* v. *Oakland*, 30 Ore. 478, 484; *Des Plaines* v. *Poyer*, 123 Ill. 348, 351. And the fact whether a certain piece of land is in an insanitary and deleterious condition so as to be subject to improvement under the provisions of the statute is to be decided by the board of appeal, if an appeal has been lodged,

or by the finding of the board of health as reported to the superintendent of public works when no appeal is taken. Upon a hearing before the appeal board the property owner could contest the finding of the board of health that his premises are in an insanitary or dangerous condition, and the recommendation that they should be treated in the manner outlined by the board in its report. The finding in either case would be conclusive and binding if there was any substantial evidence to support it. We hold, however, that the finding of the board of health and the decision of the board of appeal may be attacked in a proceeding such as the case at bar on the ground that there were no facts existing which could be regarded as supporting the conclusion. The complainants maintain that their lands are not in an insanitary condition or deleterious to health; that there were no facts upon which a conclusion to that effect could rest; that the scheme adopted by the board was not in reality a health measure, but a general reclamation scheme and public improvement which could be accomplished only through the exercise of the right of eminent domain; and that the board of health has exceeded its powers and proceeded without jurisdiction. The complainants were entitled to be heard on this contention as it presented a question of law to be determined by the court. In the case of *Grace* v. *Bd. of Health,* 135 Mass. 490, which was certiorari to quash certain proceedings and an assessment made by the board of health for the purpose of abating a nuisance by draining land, the court said (p. 499), "On such facts as are before us we cannot say that the nuisance was not such as could not be abated pursuant to the St. of 1868, c. 160. As the persons who had notice were distinctly informed that the board of health were proceeding under the St. of 1868, c. 160, it was their duty to make this objection at the hearing. Having neglected to do this, they cannot now, after the work has been finished, the benefits received, and the expenses incurred, avail themselves of this objection for the purpose of quashing the proceedings *unless it appears that the nuisance was not within*

*the statute.*" The circuit judge erred in holding that the failure of the complainants to take an appeal from the findings of the board of health precluded them from raising in this case the question of law, and in refusing to allow them to put in evidence in support of the claim. They ought not to have been so precluded even if the notices served upon them had been regular and sufficient.

The right to a permanent injunction affected by laches. The evidence shows that the contractor's preparations to do the work of filling the area in question were completed in June 1913; a dredger had been built near the foot of Ward avenue specially for this work at an expense of about $70,000; pipes had been laid and the work was proceeded with until this suit was commenced on March 4, 1914, at which time about two-thirds of the entire area had been filled in; that all this work had been done in full view of the people of the locality; and that the complainants knew the work was going on and that it was proposed to fill their lands in due course. Counsel contend that, under these circumstances, the complainants, by their failure to move promptly, have forfeited any right they may have had to equitable relief; that they should be relegated to such damages, if any they are entitled to, which they may be able to recover at law; and that "to permit a permanent injunction at this late hour would be inequitable in the extreme."

The case of *Roberts* v. *N. P. R. Co.*, 158 U. S. 5, was cited. In that case the court said (p. 11), "It has been frequently held that if a land owner, knowing that a railroad company has entered upon his land and is engaged in constructing its road without having complied with the statute, requiring either payment by agreement or proceedings to condemn, remains inactive and permits them to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages." In such cases, the railroad company having the power of emi-

nent domain, and being entitled to take land in a proper proceeding upon payment of compensation, the land owner loses
nothing through being confined to his action for damages.    In
the case of *New York City* v. *Pine,* 185 U. S. 93, the court,
after referring to decisions in that class of cases, said (p. 103),
"These views do not justify the conclusion that a court of
equity assumes a general right to ignore or supersede statutory
provisions for the ascertainment of the amount of compensation in cases of condemnation.   They simply mean that a failure
to pursue statutory remedies is not always fatal to the rights
of a party in possession, and that sometimes if full and adequate
compensation is made to the plaintiff the possession of the defendant will not be disturbed." . Obviously, such cases have no
application to the case at bar.   This court has held that an
attempt to take land under an alleged but non-existing right of
eminent domain will be restrained by injunction.   *Haw. Com.
& S. Co.* v. *Kahului R. Co.,* 11 Haw. 479.   The case of *Easton*
v. *N. Y. & L. B. R. Co.,* 24 N. J. E. 49, was also cited.   In
that case an injunction to restrain the completion of a bridge
was refused.   The complainants had stood by until an expense
of about $200,000 had been incurred before commencing suit,
though they had previously protested.   That case is simply
authority for the proposition that though a complainant might
have obtained an injunction to restrain the construction of a
public work had he made application promptly he will not be
entitled to it after large expense has been incurred and the
*status quo* cannot be restored.

The length of time which must elapse in order to show
laches varies with the peculiar circumstances of each case and
is not subject to any arbitrary rule.   *Halstead* v. *Grinnan,* 152
U. S. 412; *Lucas* v. *Am. Haw. E. & C. Co.,* 16 Haw. 80, 87.
Delay is a fact to be considered with other facts in determining
whether or not an injunction should be granted.   *Ideta* v. *Kuba,*
ante, p. 28; *Dunbar* v. *Green,* 66 Kan. 557, 567.   Laches, in
legal significance, is not delay, but delay that works disadvan-

tage to another. 5 Pom. Eq. Jur. Sec. 21; *Galliher* v. *Cadwell,* 145 U. S. 368, 373; *Ruckman* v. *Cox,* 59 S. E. (W. Va.) 760, 762; *London & S. F. Bank* v. *Dexter Horton & Co.,* 126 Fed. 593, 601. But where, as in the case at bar, an injunction is asked in support of a strict legal right, the party is entitled to it if his legal right is clear; mere delay unaccompanied by circumstances constituting an estoppel will not defeat the remedy unless it has continued so long as to defeat the right itself. 2 Pom. Eq. Jur. Sec. 817; *Menendez* v. *Holt,* 128 U. S. 514, 523; *Missouri* v. *Illinois,* 180 U. S. 208; *Galway* v. *M. E. R. Co.,* 128 N. Y. 132, 153, 155; *Rigney* v. *Tacoma L. & W. Co.,* 26 L. R. A. (Wash.) 425, 429. That expenditures have been made does not defeat the right to an injunction in this class of cases. *N. Y. Rubber Co.* v. *Rothery,* 107 N. Y. 310, 314; *Chapman* v. *Rochester,* 110 N. Y. 273.

Although the lands owned by the complainants comprise a substantial portion of the area to be filled under the contract of the Lord-Young Engineering Company, we do not understand it to be contended that the dredger would not have been built and the other lands filled had the complainants at the outset protested against the filling of their lands or commenced suit to prevent it. The contractor did not rely upon any act or representation of the complainants, or any of them, nor upon their omission to do anything that the law required them to do. There is no estoppel.

As to the propriety of the hydraulic method of filling, and of the material thereby used. This question affects the Magoon children as well as the other complainants and we will discuss it briefly, though, for reasons above set forth, the decree of the circuit judge must be reversed.

The contract authorized the hydraulic method of fill, it having been adopted because of its being the most economical method of doing the work. By this method the material dredged is carried in suspension or by the influence of water which is forced through large pipes and laid upon the lands

and intervening streets, and afterwards is distributed and leveled, the water having drained off through ditches provided for the purpose. The work is done in large sections around which bulkheads have been constructed. A section can be filled in about thirty days, the dredger working about fifteen hours per day. And in about two months after a section has been filled the ground will have dried out so as to be fit for use as before. The objection urged by the complainants against this method is that it would unreasonably and unwarrantably deprive them of the use of their premises during the process of filling and while drying out. The character of the material varies from very fine sand to coarse bits of coral, and so far as the filling of swamps, ponds and vacant lands is concerned there would seem to be no reasonable objection to the use of the hydraulic method or material of this kind. It would be well within the discretion of the superintendent of public works to prescribe such method and material. But it is quite a different matter when considered with reference to premises upon which people live or on which business is being carried on. As to such places the loss and inconvenience attendant upon the filling of the land by any appropriate method would have to be regarded as necessarily incidental to the enforcement of the law, but loss caused through the interruption of the use of premises for business or other purposes which could be avoided by following some other reasonable method cannot be regarded as merely consequential in the face of objection by the land owner. By failing to comply with a proper notice duly served under the statute a land owner would be regarded as having consented to the work being done by the superintendent of public works at the expense of the land, but such consent could only be regarded as having been given to the filling of the land in a manner which would not cause damage that could reasonably be avoided, and this, we believe, would give the owner the right to object to a method which, though proposed in good faith by the superintendent on the ground of economy, would cause avoidable loss. The owner,

of course, would have to take the consequences of his election
to insist upon a more expensive fill.

There is some conflict in the testimony relating to the pro-
priety of using material dredged from the reef and flats. The
members of the court, accompanied by counsel, inspected the
area in question and visited other places which had been filled
by the hydraulic method with similar material. Counsel for
the complainants contend that the hydraulic fill is highly im-
proper because it will interfere with the natural drainage of the
lands so filled, and in that it destroys plant life. It appears
in evidence that through the method employed the finest of the
material which is carried upon the land settles when the water
which transports it becomes quiet and as the water runs off a
sludge or mud remains which forms a strata more or less im-
pervious to water. This strata, however, is covered by the
coarser and more porous material. And the evidence shows
that the material produced by this method has antiseptic prop-
erties not possessed by ordinary dry earth. It further appears
that much of the vegetation that is not killed by being covered
with the material used is destroyed by the salt water; and that
except plants and trees that are particularly resistant to salt,
such as oleander, algeroba, ironwood, kamani, and certain va-
rieties of palms, also Bermuda grass, vegetation will not thrive
on land covered with such material. On the other hand it ap-
pears that by mixing in to a depth of a few inches ordinary
soil small plants will grow without difficulty; that the natural
rainfall will in the course of time wash out most of the salt;
and that the area upon which it would be desired to grow plants
is small compared with the whole of the area in question. The
character of the locality must be considered. It is not adapted
to agriculture, but is suited more particularly to such business
purposes as it is now partly used for, such as stables, laundries,
warehouses, mills, etc., and for cottages with small yards for
the accommodation of laborers engaged in connection therewith.
Upon the whole, we are of the opinion that the material pro-

posed to be used in the filling of the lands of the complainants is not of a character as should be held to be improper for any of the reasons urged.

The decree appealed from is reversed. A decree granting a permanent injunction, as prayed for, without prejudice to the right of the superintendent of public works, upon request of the board of health, to proceed anew under Chapter 83 of the Revised Laws, will be entered in this court.

*J. A. Magoon* and *C. H. Olson* (*Holmes, Stanley & Olson* with them on the brief) for complainants.

*A. G. Smith, Deputy Attorney General* (*I. M. Stainback, Attorney General,* with him on the brief), for the superintendent of public works.

*F. W. Milverton* (*Thompson, Wilder, Milverton & Lymer* on the brief) for the Lord-Young Engineering Company.